Richard Payton WHITE, Appellant,

v.

The STATE of Texas, Appellee.

No. 48216.

Court of Criminal Appeals of Texas.
June 5, 1974.

On Rehearing Dec. 11, 1974.

Rehearing Denied Jan. 29, 1975.

Mark Schwartzman and William W. Morris, San Antonio, for appellant.

Ted Butler, Dist. Atty., Gordon V. Armstrong and Douglas C. Young, Asst. Dist. Attys., San Antonio, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

Appellant was convicted of sale of heroin; punishment, enhanced under Article 63, Vernon's Ann.P.C., was assessed at life.

Appellant contends that he was denied his right to compulsory process, in violation of his rights under the Sixth Amendment of the United States Constitution.

I.

The record reflects that prior to trial appellant filed a motion alleging that Jimmy Martinez Leveine was present at the time the offense was alleged to have occurred, and would testify that appellant did not commit the offense, and alleging further that before the indictment or arrest of appellant an officer of the San Antonio Police Department instructed Leveine to leave Bexar County and provided him with funds to do so, knowing Leveine would be a material witness for the defense, and for the purpose of concealing evidence and depriving appellant of the right to compulsory process to secure witnesses in his behalf.

Testimony presented at the hearing prior to trial reveals that Leveine was present at the time of the alleged transaction. Officer Chevera, to whom the sale was made, testified that Leveine was his informer and part of his "cover" to protect the secret nature of his undercover work, and that as such Leveine was present prior to, during, and after the transaction, and was in fact the only person present other than appellant and Chevera himself. Later, Lieutenant Slocum testified that after the conclusion of Leveine's work with Chevera he and Leveine had a conversation. The statement of facts reflects:

"Q. What did you discuss at that time?

·"A. He thought he ought to leave town and I thought it was a real good idea.

"Q. You told him you thought it was a good idea if he left town?

"A. Yes, sir.

*     *     *     *     *     *

"Q. When you told him it would be a good idea if he left town did you give him any money to do so?

"A. He said he needed some money to eat and I gave him or had seventy-five dollars sent to him.

"Q. You didn't give him any money at that time?

"A. No, sir.

"Q. How did you send him the money?

"A. By one of my officers.

*     *     *     *     *     *

"Q. . . . you know that Jimmy Leveine had been working with Albert Chevera on a day-to-day basis on these cases; don't you?

"A. Yes, sir.

*     *     *     *     *     *

"Q. And so you knew most of the cases that Chevera had made, that Jimmy Leveine had been present with him at the time?

"A. Probably a good percentage of them."

At the close of the pretrial hearing, the court found:

"He [the witness, Leveine] has not been concealed, you have been told his name and who he is. * * *

"The basis of your argument is the government or prosecution is dependent upon the whims of a snitch, which cannot be. Whether he stays around or not would be enough to defeat the government's right to prosecute a man for trial, which can't be."

Appellant asserts this record reflects a denial of his right to compulsory process. In Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), this constitutional right was described in the following language:

"The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the

facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."

## II.

Concerning the showing necessary to support a claim of denial of compulsory process, this Court in Hardin v. State, 471 S.W.2d 60, at 62, stated:

"Where a defendant seeks a continuance because of an unavailable witness the Texas Legislature demands that the motion set forth the 'facts which are expected to be proved by the witness, and it must appear to the court that they are material.' Article 29.06(3), V.A.C.C.P. It is further required that 'the facts set forth in said motion were probably true.' Article 29.06(6), V.A.C.C.P. As a minimum requirement to determine the materiality and truth of the facts set forth the Legislature has also determined that '[a]ll motions for continuance on the part of the defendant must be sworn to by himself.' Article 29.08, V.A.C.C.P.

"This Court has consistently and recently held that no reversible error exists where a defendant sought either a continuance to get his witness, or an 'attachment of witness,' where the defendant did not offer a sworn statement at the time of the motion saying what the witness would have testified to. Brito v. State, Tex.Cr.App., 459 S.W.2d 834. See also Ex parte Selby, Tex.Cr.App., 442 S.W.2d 706.

"The same rights of a defendant are at stake when he seeks a continuance to get a witness, an attachment of a witness, or a bench warrant for a witness: has his constitutional right to compulsory process of a witness been denied. The same issue is before the court in each instance: whether the request of a witness by the defendant is a futile act which will only serve to cause delay rather than to promote justice. Where a defendant seeks compulsory process for a witness to appear in his defense which results in a continuance, an attachment, or a bench warrant the court is within its rights to demand sufficient appearance of the materiality of the witness' testimony. An affidavit or sworn testimony by the defendant saying what the witness would testify to is a reasonable minimum requirement.

"In the instant case the appellant did not make a sworn statement and said nothing. His attorney took the stand during the trial to state that his work product and investigation convinced him that these five witnesses would, if present, have testified that appellant could not possibly have been in the City of Midland on the day alleged in the indictment. He further testified that neither he nor his investigator had seen or talked to any of the five witnesses and did not know what they would say. The record is devoid of any showing during the trial or in a motion for new trial of what the witnesses would have testified or if they were willing to testify."

In the instant case there is no such showing of what Leveine would have testified. Were this a claim of a denial of a motion for continuance, an attachment, or a bench warrant, this failure would be sufficient to support the conclusion that materiality was not shown. Here, however, appellant does not claim the ruling of the trial court denied his right to compulsory process, but rather, that his right to compulsory process was pre-empted by action of the State in the nature of suppression of evidence. The allegations of appellant, if true, would constitute a most serious violation of his right to compulsory process, since it alleges elements of suppression of evidence as well, which, by accomplishing a successful "disappearance" of the witness, result in

defeating the possibility of compelling his attendance even before the right can be asserted, and result in such a thorough suppression of evidence as to prevent a showing of precisely what the evidence would be, since the witness was gone before any chance to determine what his testimony would be even arose.[1]

The record, however, does not support appellant's claim that agents of the State instructed Leveine to leave town for the purpose of concealing evidence and depriving appellant of the right to compulsory process. But even though the record shows neither such direct instruction nor such condemnable purpose, it does show, by Officer Slocum's own admission, that he knew Leveine was an active participant in making many cases with Chevera, and that with such knowledge he actively participated in facilitating and encouraging Leveine's departure, by approving of Leveine's suggestion that he (Leveine) leave town, by promising him money to assist him in leaving, and by having the promised money delivered by one of his officers. Thus, the record does show State action resulting in Leveine being unavailable as a witness.

Since Leveine was not available, it is impossible to say precisely what his testimony would be, but since he was the only witness present at the alleged transaction other than the accused and the undercover agent, all the evidence on materiality points unquestionably toward the conclusion that Leveine would be a material witness.[2] Under a claim of State action resulting in the unavailability of a witness, as opposed to a claim of trial court error in refusing to compel attendance of a witness,[3] we find the showing of materiality was sufficient. Materiality, however, is not the sole question before us.

### III.

In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, it was held:

" . . . that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

That principle was reaffirmed in Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L. Ed.2d 706, with this observation:

"Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence."

*Moore* held the evidence therein not material. Such cannot be said of the situation here, as shown above, because of the nature of the "suppression" involved. The action of the State complained of is not the withholding of evidence in the possession of the State which has subsequently come to light and been found favorable to the accused. It is, rather, action contributing to the absence of a material witness so that, apparently, the witness and the evidence he could give were placed beyond the reach of both the defense and the State. This unique character of the alleged suppression demonstrates the inappropriateness of the three-pronged test stated in *Brady* and *Moore*.

---

1. The conversation and delivery of the money occurred in August or September of 1972. All police officers testifying said they had neither heard from nor seen Leveine after that date. Appellant was indicted and arrested February 1, 1973, over four months after the witness was last seen.

2. Although the issue in Aguilar v. State, Tex. Cr.App., 444 S.W.2d 935, concerned the re-

quirement of disclosing the name of the informer, the statement regarding materiality is instructive. See also Royal v. State, Tex.Cr. App., 448 S.W.2d 470, and cases cited therein; and James v. State, Tex.Cr.App., 493 S.W.2d 201.

3. No such claim is here raised. Subpoena was issued for Leveine and returned unserved because he could not be located.

The acts complained of occurred before appellant could make any request, and were not of an ongoing character, so the requirement that the suppression be after a request is not applicable. We think the purpose of this requirement in a *Brady* situation is twofold: that the defense make a timely request, and that the State be on notice of what is required of it when the acts of suppression are committed. From the record before us it is clear that appellant timely sought to secure Leveine. Regarding the State's being on notice of what was required of it, Slocum knew Leveine had been working closely with Chevera on numerous cases on a day-to-day basis, and that he was present on at least "a good percentage of them." Although the record does not show that Slocum knew which particular cases in which Leveine would be a material witness, he knew that Leveine participated in undercover operations over a four month period during which Slocum met with him about a dozen times, and knew that he would be a material witness in some of those cases. Knowing that, we do not believe the State can contend, nor has it contended, that Slocum's lack of knowledge, if he lacked such knowledge, that Leveine would in fact be a material witness in this particular case can negate the notice Slocum had, at the time he supported and participated in Leveine's plan to leave town, that Leveine would be a material witness. Thus the dual purposes of the State's being on notice and the defense making timely request are met in this case.

### IV.

The second and third elements stated in *Brady* and *Moore* are that the evidence be material and favorable for the defense. Again, the nature of the alleged suppression is such that the precise content of the evidence cannot be shown. The obvious purpose of these requirements is that if the evidence were not favorable and material the fact that it was not presented to the jury could not have harmed the defense. Here, however, we have found that sufficient materiality has been shown. In this respect a close analogy is found in those cases stating the test for requiring disclosure of the identity of a confidential informant. As explained in Aguilar v. State, 444 S.W.2d 935, unless the informer participated in the offense, was present at the time, or is otherwise shown to be a material witness as to whether the appellant committed the act charged, his identity need not be disclosed. But if such materiality be shown, the identity must be revealed. Such was the case in James v. State, 493 S.W.2d 201, in which this Court ordered reversal because of the failure to disclose the identity of an informer who was shown to be a material witness because he was present at the sale of marihuana, even though he was not an actual participant in the sale. Such relationship was precisely that of Leveine to the sale alleged herein. There is no additional requirement that the particular evidence which would be given be shown to be material, or to be favorable to the defense. This is so because of the logical impossibility of showing such character of the evidence as prerequisite to learning what the evidence is!

It is the material character of the witness, not of the testimony, which must be shown in such cases as this, as distinguished from cases where compulsory process is denied by ruling of the court (e. g., Hardin v. State, supra), or where particular evidence is sought (e. g., Brady v. Maryland, supra), or where evidence is revealed subsequent to the trial (e. g., Alcorta v. Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L. Ed.2d 9). Although each of those cases involves an element of denial of compulsory process or an element of suppression of evidence, they are distinguishable from the instant case and the refusal to reveal the identity of a material witness in that such latter two situations present a claim for a unique type of evidence; namely, evidence yet to be developed.

Where the evidence is by necessity yet to be developed, it is sufficient to show the material character of the witness: once

this is done, the State may not obstruct the pursuit of it by the defense, either by refusing to reveal the identity, or by spiriting the witness away. What benefit is the discovery of the informer's identity if the State has already secured his "disappearance"? This is not to say that a defendant can never be brought to trial until every identifiable but missing witness has been subpoenaed, attached, and been made available to the defendant. See McCloud v. State, Tex.Cr.App., 494 S.W.2d 888. Nor does this excuse the defense from the exercise of diligence in its own preparation for trial and in securing attendance of its own witness. See Hardin v. State, supra. We only hold that the State may not defeat the defendant's "right to present his own witnesses to establish a defense" (Washington v. Texas, supra) in those cases where the identity of the informer must be disclosed by insuring that the informer thus identified will be unavailable as a witness.

### V.

The requisite tests of materiality of the witness, timely pursuit by the defense, and knowledge of the materiality of the witness at the time of the State's alleged suppression having been met, there remains only the question of whether the suppression alleged shows improper action attributable to the State.

Even if the plan to leave town originated with Leveine, it is clear from the record that Officer Slocum actively encouraged and participated in that plan by responding to Leveine's suggestion stating it was a good idea, by promising to send money, and by sending the money promised. Whether Slocum's sole intent was for Leveine's safety (which is not contended) is irrelevant. Just as the State's interest in confidentiality of an informer must yield in a proper case, despite its interest in encouraging and protecting him, so too must the informer be made available in a proper case. Other means are available for the protection of a material witness than sending him out of town and rendering him totally unavailable to either party.

The State's contention that Slocum did not instruct, order or force Leveine to leave town and that no bad faith is shown is not controlling. See Brady v. Maryland, supra. The police encouraged and participated in the plan with knowledge of Leveine's materiality as a witness. Likewise, the State's claims that the police had no knowledge of Leveine's whereabouts at the time of trial and that subpoena issued for Leveine but was returned unserved because he could not be located do not change the controlling facts. The fact that Leveine's disappearance was so successful only demonstrates more sharply the harm.

The trial court correctly observed that appellant was given the informer's identity. The contention, however, was that the State's action concealed the *informer*, not merely his identity. The trial court also correctly observed that the prosecution of a case is not to depend upon the "whims of a snitch." What was here the case, however, was participation by the State in action which rendered a known material witness unavailable to appellant for the exercise of his constitutional right "to present his own witnesses to establish a defense," Washington v. Texas, supra. It is not the action of the witness acting alone, but the State's participation which constitutes the harm and requires reversal.

For the reasons stated, the judgment is reversed and the cause remanded.

MORRISON, Judge (concurring).

It is only where the State took a part in rendering a material witness unavailable for pre-trial conference that a reversal is called for. Because such a case was here presented, I join in this reversal.

DOUGLAS, Judge (dissenting).

The majority reverses this conviction because of the absence of Leveine who was

with Officer Chevera at the time White sold the heroin. When Leveine stated that he should leave San Antonio, Officer Slocum agreed and furnished him some money. It is common knowledge that the life expectancy of an informer is not very long, especially after his name is known to heroin pushers.

Under the majority holding, if an officer attempts to protect one who has been an informer by helping him leave town and he cannot later be found, none of the cases where he is alleged to have been present at the sale of heroin can be tried.

The majority reverses even though there is no motion for new trial alleging what he expected to be proved by the absent witness. There is no statement or even an allegation of what his testimony would have been had he been present.

Officer Chevera testified that appellant sold him heroin. The appellant testified that he had never seen Leveine before the day in question. There is no claim by appellant or evidence in the record that Leveine informed on appellant.

The appellant does not point out what part of his own contradictory statement that he expected Leveine to corroborate. Appellant testified on direct examination that he was a heroin addict and had been in penitentiaries a total of five times for burglaries that he had committed to obtain drugs.

He testified that he got in the car with Leveine and Chevera and they followed a man called Chango in an effort to buy heroin. He testified that he gave some money to Leveine, who bought heroin from Chango and that later he and Leveine had a "fix." Appellant also testified that the night before the trial he talked to Chango in the jail and that Chango said that he had received a life sentence and that he had a "Chevera" sale and did not want to testify. He related that Chango was one of Chevera's victims. He then contradicted himself and testified that he had never

seen Chango selling dope. Appellant also testified that he had burned people before, and, "Burning, you know, like if you give me some money to score some dope for you and I take off and never come back. That is burning."

To obtain a new trial because of an absent witness, a defendant must show that the production of the absent witness would likely change the result of the trial. Here the appellant himself testified that Chango sold the heroin and later testified he had never seen Chango sell heroin. He also testified that he was an addict and had burned people by taking money to buy dope and not return with the dope or the money. Appellant did not call Chango who he claims was in jail at the time of the trial and present at the time of the alleged offense.

It appears that the majority has gone a long way in the wrong direction to establish a new rule of law. The majority opinion would allow heroin pushers to go free because an officer, even before indictments are returned, assists an informer to get out of town for his own safety, and at the time of trial, the informer cannot be found. Would the majority require the officers have an informer stay where he would more likely be killed? Where one has informed on many people in the same city as this record indicates, would the odds be greater that he would be present to testify if he stayed among those people or left town for his safety?

The judgment should be affirmed.

## OPINION ON STATE'S MOTION FOR REHEARING

MORRISON, Judge.

■ The State now asserts, and we agree, that appellant failed to perfect his claim of denial of due process. They point out that this record does not reveal that the witness in question ever left town or that such witness was not in fact available

at the time of trial. The appellant made no proof or offer of proof that the witness normally lived at the address on the subpoena, whether or not he had recently moved, what effort was made by the officer to locate him, or even the manner in which the information was acquired that this was the proper address, if it was. As a matter of fact, this record is devoid of any testimony that the witness was not in fact available and that his whereabouts were unknown to the appellant at the time of trial. There is no showing that he made any request of any person involved in the trial of this case about their knowledge of the whereabouts of the witness. No request was made of the prosecution to determine if they had information concerning the whereabouts of the witness.

Appellant issued a subpoena for the witness twelve days before the trial. It was returned unserved, "Subject not at this address." The unavailability of the witness could not be logically inferred on this basis alone. Appellant failed to establish that, apart from issuing the subpoena, he exercised due diligence in securing the attendance of this missing witness. Cf. Spencer v. State, Tex.Cr.App., 503 S.W.2d 246.

■ One of the two other grounds not discussed in our original opinion is appellant's contention that the court erred in not quashing the third paragraph of the indictment which alleged a 1955 burglary conviction from Bexar County. Appellant contends that at the time of such conviction he was indigent and was not represented by counsel. At the hearing on the motion, the State introduced a judgment in said cause which recites that the appellant "stated to the court that he desired to waiver jury and plead guilty before the court, and that he was without counsel, whereupon the court appointed a practicing attorney of this Bar to represent said defendant." A jury waiver signed by Emmett J. Rohm as "Attorney for Defendant"

was also introduced and proof was offered that Emmett J. Rohm was a practicing attorney in San Antonio in 1955.

Appellant's testimony that he was not represented by an attorney, standing alone, is insufficient to disprove the recitations in the judgment. Reeves v. State, Tex.Cr. App., 500 S.W.2d 648; Gutierrez v. State, Tex.Cr.App., 456 S.W.2d 84.

The trial court did not err in overruling the motion to quash.

■ Appellant's last ground of error is that the court erred in overruling his motion for instructed verdict. He claims that there is no showing that heroin is a narcotic drug within the terms of Article 725b, Sec. 1(14), Vernon's Ann.P.C.[1]

The Article in effect at the time read:

"(14) 'Narcotic drugs' means coca leaves, opium, cannabis, amidone, isonipecaine and every substance neither chemically nor physically distinguishable from them; also opiates, which shall mean any drug having an addiction-forming or addiction-sustaining liability similar to opium or cocaine; . . ."

Appellant's contention that no offense is charged since heroin is not mentioned in said Article was answered adversely to him in Gonzales v. State, 163 Tex.Cr.R. 432, 293 S.W.2d 786.

The State's Motion for Rehearing is granted; the judgment of reversal is set aside, and the judgment is now affirmed.

ONION, Presiding Judge (concurring).

After further study of this record on State's motion for rehearing, I am convinced we were in error in reversing the case on original submission on the basis that State action resulted in Leveine being unavailable as a witness resulting in deprivation of appellant's constitutional rights.

---

1. Sec. 1(14)–(16) as amended by Acts 1971, 62nd Leg., p. 3069, Ch. 1023, Sec. 1, effective June 15, 1971.

This record reflects that some seven and one-half months prior to trial, and before indictment and arrest of the appellant, Lt. Slocum of the San Antonio Police Department had a conversation with Leveine, an informer who Slocum knew had participated with undercover agent Albert Chevera in making a number of narcotic cases. Leveine expressed the thought that he should leave town, and Slocum agreed that it was a good idea. It is certainly common knowledge that lives of informers in narcotic cases are in constant danger. The conversation appears to have taken place shortly after Leveine's activities as an informer had been completed. Upon Leveine's suggestion that he "needed some money to eat" Slocum sent him $75.00 by one of his officers. The amount involved was not sufficient to allow him to travel any great distance or to keep him in food for long.

As pointed out by the majority opinion on original submission the record does not support appellant's claim that agents of the State instructed Leveine to leave town for the purpose of concealing evidence and depriving appellant of the right to compulsory process of witnesses. The appellant had not even been arrested and no indictment had even been returned at the time.

Only twelve days before trial did the appellant issue a subpoena for Leveine. It was returned four days before trial marked "subject not at this address."

The record does not reflect that Leveine normally lived at the address placed on the subpoena by the appellant, nor whether he had recently moved or not, or what efforts were made by the officer who attempted to serve the subpoena to locate Leveine, or how appellant acquired the information about the address used on the subpoena.

There is nothing to show that Leveine in fact left town. If he did, there is no showing he was still out of town at the time of the trial some seven and one-half months later.

To hold under the circumstances of this particular case that State's action deprived the appellant of compulsory process would mean that an accused should be allowed to go free because an officer, before an indictment is returned, gives an informer money for food and agrees that under the circumstances then existing he should leave town for his safety and later the informer cannot be found by the issuance of a subpoena under the conditions here described.

I agree that the State's motion for rehearing should be granted and the judgment should be affirmed.

ODOM, Judge (dissenting).

I vigorously dissent to the position taken by the majority on the State's Motion for Rehearing.

Without benefit of any authority, the majority assert that in order to perfect his claim of a violation of his constitutional rights, the appellant must do a useless thing. Prior to trial appellant filed a motion alleging Leveine was a material witness present when the offense was alleged to have occurred, and would testify that appellant did not commit the offense, and alleging further that before the indictment or arrest of appellant an agent of the State instructed the material witness for the defense to leave the county and provided him with funds to do so, knowing him to be such a witness and for the purpose of concealing evidence and depriving appellant of his right to compulsory process to secure witnesses in his behalf. The testimony reviewed and law discussed in this Court's opinion on original submission reveal that the State took improper action participating in rendering a material witness unavailable to the defense. The evidence is clear that the State violated appellant's constitutional rights in a manner highly prejudicial in that it preempted his right and denied him the opportunity to present a defense in his behalf.

I first dissent from what the majority say was shown. The majority assert:

"There is no showing that he [appellant] made any request of any person involved in the trial of this case about their knowledge of the whereabouts of the witness. No request was made of the prosecution to determine if they had information concerning the whereabouts of the witness."

The State in its brief on original submission made the following assertion, and cited pages in the record which show its truth:

"Officer Chevera, Detective James Cullar, and Detective Odis Doyle all stated they had no knowledge whatsoever of Jimmy Leveine's whereabouts after the termination of Officer Chevera's undercover operation."

Furthermore, Lieutenant Slocum, whose testimony was quoted in part in the opinion on original submission, also testified that he had received no communications from Leveine since he had promised to send him money to leave town, and that he had no knowledge of his whereabouts at the time of trial. This was sufficient to show the success of the State's improper course of action.

I secondly dissent from what the majority say need be shown. The State had taken a material role in securing the witness' disappearance. It then became incumbent upon the State, not the appellant, to show that the witness had thereafter, if he had, again become available. Why should the accused be required to make any further showing of the success of the State's action than was made in this case?! Once appellant demonstrated the success of that action by the State, the task passed to the State to show subsequent events rendered their action harmless. Is the majority holding that beyond showing harm, the appellant must show the impossibility of subsequent events in the world at large having rendered the harmful course of events harmless? When the majority state the record does not reveal the witness ever left town or was not in fact available, are they suggesting appellant should have subpoenaed all persons in Bexar County in order to demonstrate that none were the witness sought? Had appellant shown the "diligence" suggested by the majority, would they then hold some further acts were possible, but not shown to have been taken, and therefore insufficient "diligence" shown? Appellant showed the materiality of the witness, and showed the State had taken steps to render the witness unavailable, and further stated his need and desire to have the witness for his defense. This was sufficient diligence to protect and perfect for review by this Court the constitutional right asserted.

Article 44.23, Vernon's Ann.C.C.P., directs this Court in the determination of appeals, and dictates that no affirmance of a case shall be determined on mere technicalities. "A technicality has been well defined as a microbe which has gotten into the law and given justice the blind staggers."[1] The majority have reached for a mere technicality upon which to affirm this case, and in doing so have ignored the violated constitutional rights of appellant. The lack of diligence upon which the majority base their action is a mere technicality because at issue is not just any missing witness, it is a witness missing by action of the State, and the test of diligence applied is of no relevance in such a case as this.

I dissent.

ROBERTS, J., joins in this dissent.

1. McArthur Mining Co. v. Reconstruction Finance Corp., D.C., 87 F.Supp. 211.