Frank H. HERNANDEZ,
Petitioner-Appellee,

v.

W. J. ESTELLE, Jr., Director, Texas
Department of Corrections,
Respondent-Appellant.

No. 80–2049
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

Sept. 29, 1981.
Rehearing Denied Nov. 4, 1981.

Keith W. Burris, Asst. Dist. Atty., San Antonio, Tex., for respondent-appellant.

Frank H. Hernandez, pro se.

Before AINSWORTH, REAVLEY and RANDALL, Circuit Judges.

PER CURIAM:

This is a consolidated appeal by the state from two decisions in the district court granting applications for post-conviction relief under 28 U.S.C. § 2254 filed by Frank Hernandez and Richard Peyton White in which each contested his conviction in state court after a plea of not guilty to the offense of sale of heroin. We affirm the district court.

Hernandez and White were tried separately in state court before a jury, were found guilty and then sentenced under the Texas recidivist statute. In each instance the Texas Court of Criminal Appeals affirmed the convictions. *Hernandez v. State,* 506 S.W.2d 884 (Tex.Cr.App.1974); *White v. State,* 517 S.W.2d 543 (Tex.Cr.App. 1974). Hernandez subsequently filed a post-conviction writ of habeas corpus in the state convicting court and received an evidentiary hearing, after which relief was denied by both the convicting court and the Texas Court of Criminal Appeals. Prior to the instant habeas corpus petition, Hernandez filed a federal habeas corpus application, which was denied by the United States District Court for the Western District of Texas. Meanwhile, White's conviction was affirmed on rehearing by the Texas Court of Criminal Appeals, after which he unsuccessfully sought application for writ of certiorari from the United States Supreme Court.

In 1978, Hernandez and White filed separate petitions for post-conviction relief in federal district court under 28 U.S.C. § 2254. Both alleged that the conduct of police officer Preston Slocum caused the deliberate disappearance of a material witness, Jimmy Levine, thus violating the applicants' right to due process of law. The district court referred the two petitions to a

magistrate for a consolidated evidentiary hearing. The magistrate submitted findings of fact and recommended that the district court grant the applications. The district court subsequently granted the writs of habeas corpus.

The criminal convictions of Hernandez and White arose from an undercover drug operation by the San Antonio Police Department in the summer of 1972. The operation resulted in the indictment of 138 individuals and 144 indictments. The two central actors in the operation were undercover police officer Albert Chevera and his companion Jimmy Levine. Throughout the operation officer Chevera played the role of a drug addict and was accompanied by Jimmy Levine, who introduced Chevera to the drug scene, placing Chevera in contact with drug sellers. Levine was compensated for every purchase made by Chevera and was present at the disputed purchases of heroin from White on one occasion, and from Hernandez on another. In late August, 1972, shortly before the termination of the undercover operation, Levine phoned officer Slocum, the officer in charge of the operation. Slocum told Levine the police department was about to run a raid. Levine replied that he was going to leave town. Slocum answered that he thought it was a good idea. Levine then told Slocum that he needed some money and $75 was later delivered to Levine by another officer. Shortly thereafter the police conducted a mass roundup of the individuals named in the 144 sealed indictments resulting from the Chevera-Levine undercover operation. Since that date, Jimmy Levine has vanished.

The issue on appeal centers around the disappearance of Jimmy Levine. This court has held that the deliberate concealment by the state of a material witness is a prima facie deprivation of due process, which ripens into a constitutional error upon a showing that the missing witness' testimony, when evaluated in the context of the entire record, would create a reasonable doubt of guilt that did not otherwise exist. *Lockett v. Blackburn*, 571 F.2d 309 (5th Cir. 1978), *cert. denied*, 439 U.S. 873, 99 S.Ct. 207, 58 L.Ed.2d 186 (1979) (United States Attor-

ney's Office purchased airline tickets for witnesses and a police officer gave the two witnesses $130 in spending money, after which the witnesses left town); *Freeman v. Georgia*, 599 F.2d 65 (5th Cir. 1979), *cert. denied*, 444 U.S. 1013, 100 S.Ct. 661, 62 L.Ed.2d 641 (1980) (without approval by superiors, a police officer deliberately concealed a key witness, later marrying the witness). In the decision below, both the magistrate and the district court found deliberate concealment in officer Slocum's actions and further found that Levine's testimony would have created a reasonable doubt of Hernandez' and White's guilt. After applying *Freeman* and *Lockett* to the facts, the district court granted the writs of habeas corpus.

■ The state argues that the district court erred in finding deliberate state concealment of Levine and in finding that Levine's testimony would have been beneficial to Hernandez and White. This court's review of the district court's fact findings is extremely limited: findings of fact by the district court in federal habeas corpus cases will not be set aside unless clearly erroneous. Fed.R.Civ.P. 52(a); *Baker v. Metcalfe*, 633 F.2d 1198 (5th Cir. 1981); *Parnell v. Wainwright*, 464 F.2d 735 (5th Cir. 1972) (the findings of a magistrate in a post-conviction remedies case, when adopted by the district court, are subject to the provisions of Rule 52(a)). A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been made." *United States v. United States Gypsum Company*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

■ After reading the entire record we see no reason to reverse the district court's findings of fact. It is clear from the record that Slocum was fully aware that his conversation with Levine would render a material witness unavailable. Thus, we fail to find clear error in the district court's finding of deliberate state concealment of Levine. More problematic, however, is the

district court's finding that Levine's testimony, when evaluated in the context of the record, would have been beneficial to Hernandez and White. In this case, we are in the difficult position of determining the value of Levine's testimony without the benefit of the testimony itself.[1] No one knows, of course, what Levine would say should he suddenly appear. Since Levine is unavailable for questioning, the court can only look to the record for circumstantial indicia of what his testimony would be. Levine's state-induced absence at the time of trial raises the suspicion at least that he would not have corroborated the state's version of the events involving the disputed purchase of heroin from White on one occasion, and from Hernandez on another. *Lockett v. Blackburn*, 571 F.2d at 314 n.6. Moreover, before White's trial Chevera was evasive and uncooperative as he refused to discuss the role and present location of Levine with White's counsel or investigator. This reluctant attitude lends credence to the proposition that Levine's testimony would not have aided the state.

A review of the record reveals the importance of Levine's testimony: in both instances three people were present at the heroin transactions—Chevera, Levine and either White or Hernandez—and absent Levine's testimony the nature of the transactions become a swearing match between Chevera and either defendant. Because both Hernandez and White claim that Levine would corroborate their versions of the heroin sales, the absence of Levine clearly prejudices them. To reward the state for permanently secreting witnesses in a manner more successful than the state of Georgia did in *Freeman*, thus avoiding constitutional error simply because the court is unable to review the missing witness' testimony, violates the court's sense of fairness and basic justice. If the state successfully and permanently conceals a material witness, prejudice results when the absent witness' alleged testimony, circumstantially derived from and evaluated in the context of the entire record, would create a reasonable doubt of the defendant's guilt that did not otherwise exist.[2] For these reasons, based upon the record before this court, we do not find clear error in the district court's finding that Levine's absence prejudiced Hernandez and White.

■ The state also argues that *Freeman* and *Lockett* do not govern this case as they are distinguishable from the instant case. On this issue this court is not shackled by the clear error rule. Conclusions of law by the district court in federal habeas corpus cases are not binding on this court and we may freely substitute our judgment on the law for the district court's. *Baker v. Metcalfe*, 633 F.2d at 1201. Yet even with such freedom, we cannot accept the state's distinctions. *Freeman* and *Lockett* are not distinguishable from the instant case.

■ The state gamely attempts to distinguish *Freeman* and *Lockett* on several grounds. First, the state argues that in contrast to *Freeman* and *Lockett*, the decision to leave to town was made independently by Levine. We fail to see the distinction. In both *Freeman* and *Lockett* it is not clear who originally suggested that the

---

1. The instant case differs from *Freeman*. In *Freeman*, the missing witness was later located and the nature of her testimony became part of the record. The *Lockett* opinion does not reveal whether the two witnesses had been located. The court merely remanded the case for an evidentiary hearing to determine if the unavailability of the witnesses prejudiced the appellant Lockett. 571 F.2d at 314.

2. The district court's presumption language in its order granting Hernandez' writ of habeas corpus is incorrect. The district court states "where the state successfully and permanently secretes the witness, the substance of the absent testimony *must be presumed* against the state as in favor of the defendant." (Emphasis added). *Lockett* requires a showing that the missing testimony would create a reasonable doubt of guilt that did not otherwise exist. The district court's presumption would eliminate the requirement of such a showing. Thus, the district court's statement is incorrect. As the text indicates, in the instant case there is a showing that the missing witness' alleged testimony would have created a reasonable doubt of guilt that did not otherwise exist.

witnesses disappear.[3] Furthermore, the state misreads *Freeman* and *Lockett*: both turn on the state's action—the concealment—not the source of the decision to conceal a witness. Thus it is irrelevant that Levine first mentioned leaving town. Second, the state distinguishes *Freeman* and *Lockett* by noting that in contrast to those decisions, the state made a good faith effort in the instant case to locate Levine. The state, however, overlooks the fact that in *Freeman* "the state sought to locate Darlene [the missing witness] and even had a material witness arrest warrant for her. Agents of the district attorney could not find her at the address furnished." 599 F.2d at 68. Third, the state notes that Slocum was motivated by a good motive— the safety of Levine. The state of Louisiana made this same argument in *Lockett*. There the court astutely held that although such a motive was appropriate, it did not justify all the state's conduct. 571 F.2d at 311 n.1. Undoubtedly, police should be concerned for the safety of their employees, but there are other methods of protecting a material witness. In the instant case, the cost of protecting Levine would have been attributable to 144 cases. Lastly, the state argues that in contrast to *Freeman* and *Lockett*, the efforts of Hernandez and White revealed no real desire to have Levine appear. This court fails to see the importance of the distinction. Whether a party actively seeks to discover a particular material witness is irrelevant in the *Lockett* and *Freeman* decisions. Moreover, the instant case is very similar to *Freeman* and *Lockett*. In *Freeman* the defendant, like the defendant Hernandez in the instant case, failed to subpoena or make any conscientious effort to find the missing witness, 599 F.2d at 68; in *Lockett* the defendant, like the defendant White in the instant case, gave no indication that he was seeking the missing witness until the day of the trial, 571 F.2d at 312. In summary, the state fails to distinguish the instant case from *Freeman* and *Lockett*. We conclude that the district court properly applied *Freeman* and *Lockett*.

Therefore, the judgment of the district court is AFFIRMED.

## ON PETITION FOR REHEARING

The decision in this case incorrectly treated *Estelle v. White*, No. 80–2039, and *Estelle v. Hernandez*, No. 80–2049, as a consolidated matter. Although the cause originally was a consolidated matter, in an order entered prior to our decision, we remanded *Estelle v. White*, No. 80–2039, to the district court for reconsideration in light of *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). Unlike *Estelle v. White*, however, the district court in *Estelle v. Hernandez*, No. 80–2049, considered the state record as a whole and concluded that the state court's factual determination was not clearly supported by the record and that the erroneous nature of the state's determination was established by convincing evidence. *See Estelle v. Hernandez*, SA–78–CA–216, slip op. at 4–5 (W.D.Tex. Aug. 18, 1980). Consequently, there is no *Sumner v. Mata* infirmity in *Estelle v. Hernandez* and we need not remand *Estelle v. Hernandez* as we did *Estelle v. White*. Accordingly, we MODIFY our opinion, striking all references to *Estelle v. White*, and in all other respects DENY the petition for rehearing.

---

**3.** In *Freeman*, the motivation behind police sergeant Fitzgerald's concealment of the key witness Darlene is clearly a love story; however, whether Fitzgerald or Darlene suggested the concealment remains a mystery. In *Lockett*, the officer suggested "the idea of sending the witness out of town to the Orleans Parish District Attorney's Office." 571 F.2d at 312. Again, the court fails to mention whether the officer or the witness originally suggested the concealment.