**Ex parte Robert R. SALINAS, Appellant.**

**No. 69183.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 23, 1983.

---

George Scharmen, San Antonio, for appellant.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is a post-conviction application for writ of habeas corpus brought under Article 11.07, V.A.C.C.P.

Applicant was convicted of the offense of sale of heroin. His punishment, enhanced by allegation and proof of a prior felony conviction, was assessed by the court at 30 years' imprisonment. On appeal his conviction was affirmed in *Salinas v. State*, 542 S.W.2d 864 (Tex.Cr.App.1976).

Appellant filed his habeas corpus application in the convicting court alleging:

"Petitioner is illegally detained in that he was convicted in violation of the due process clause of the 14th Amendment to the United States Constitution, the compulsory process clause of the 6th Amendment to the United States Constitution, and Art. I, Sec. 10 of the Texas Constitution because the State of Texas deliberately concealed a material witness, Jimmy Levine, whose testimony would have

been beneficial to the defendant and would have created a reasonable doubt of guilt that did not otherwise exist when evaluated in the context of the entire record of testimony in cause no. 72–CR–1877 in the 186th Judicial District Court of Bexar County, Texas."

Applicant also alleged Levine was the same Jimmy Levine, the missing witness involved in *Hernandez v. State*, 506 S.W.2d 884 (Tex.Cr.App.1974); *White v. State*, 517 S.W.2d 543 (Tex.Cr.App.1974), and *Varela v. State*, 561 S.W.2d 186 (Tex.Cr.App.1978). See also *Sigard v. State*, 537 S.W.2d 736 (Tex.Cr.App.1976).

On appeal of applicant's conviction this court wrote:

"Grounds of error two and three assert that appellant was deprived of his right to compulsory process for witnesses by reason of deliberate interference by the State. He contends that the San Antonio Police Department caused the witness Levine to leave San Antonio and secrete himself so as to escape the process of the court and thereby make his testimony unavailable. Appellant produced no evidence to that effect, but he requests this court to take judicial notice of certain testimony summarized by this court's opinion in *White v. State*, 517 S.W.2d 543 (Tex.Cr.App.1974)."

This court declined to consider the testimony in *White* because an appellate court will not go to the record of another case for the purpose of considering testimony not shown in the record of the case before it, because while *White* and applicant's case involved some of the same witnesses, they involved different defendants and different offenses, and because of the ruling in *White* (517 S.W.2d 543).

On appeal this court also rejected applicant's contention the trial court erred in overruling applicant's fifth motion for continuance based on the unavailability of Levine. Noting, inter alia, that the trial occurred 33 months after arrest, this court found a lack of diligence in attempting to locate Levine. It was stated:

"If the evidence does not indicate a probability that the witness can be secured by a postponement, or if it appears that a continuance due to the absence of the witness would delay the trial indefinitely, the motion may be properly denied —. In addition, we note that appellant's motion did not allege that the testimony could not be procured from any other source known to the defendant, as is specifically required by Art. 29.07, Vernon's Ann. C.C.P. . . . ."

█ It is well settled that allegations in a motion for continuance, though they must be sworn, are not self-proving. *Taylor v. State,* 612 S.W.2d 566 (Tex.Cr.App.1981). The applicant offered no evidence in support of his motion for continuance on the basis of the missing witness, Levine. His assertions in the motion as to how he expected Levine to testify were not a proffer of evidence. See Article 40.09, § 6(d)(1), V.A.C.C.P.

At trial the State offered the testimony of undercover officer Albert Chevera, his immediate supervisor, Detective Odis Doyle, and the chemist, Jesus Almaguer. The applicant then offered for the first time the testimony of Investigator Charles Steffano and his attorney as to efforts to locate Levine. There was no dispute as to the State's version that applicant sold heroin to Chevera. Applicant did not testify.

After the filing of the post-conviction application for writ of habeas corpus, the convicting court filed its findings of fact and conclusions of law. Such order indicated a hearing was held and evidence stipulated. It appears certain excerpts from the trial testimony of undercover officer Chevera and Detective Doyle were offered in support of the stipulations as well as the quoted testimony of Police Lt. Slocum tak-

en from the opinion in *Varela v. State,* 561 S.W.2d 186, 188 (Tex.Cr.App.1978). The said findings stated in part:

"4. That in the stipulated facts, the State and defense agree to the following:

"a. That Albert Chevera, Preston Slocum and Odis Doyle were involved in the investigation of and the prosecution of the Petitioner for the offense for which he was convicted.

"b. Chevera was the officer that is alleged to have made the buy of heroin from the Petitioner, Odis Doyle was his field supervisor and Preston Slocum was the Police Lieutenant in charge of the narcotics division at the time.

"c. A person by the name of Jimmy Levine . . . was the informer of the police and was also involved in the investigation of the Petitioner.

"d. Jimmy Levine was present during the alleged sale of heroin by the Petitioner in this case.

"e. Petitioner and his counsel attempted to subpoena Jimmy Levine for his testimony at the trial on the merits in cause number 72–CR–1877. See the discussion of the Motions for Continuance at 542 S.W.2d 866.

"f. Jimmy Levine was not served with subpoena and did not appear at the trial on the merits in cause number 72–CR–1877. For what reason is not disclosed by any record anywhere."[1]

The court found that despite the stipulations in "e" and "f" above there was a serious question as to whether Levine actually left San Antonio *because* of suggestions by Preston Slocum or any other officer based on the stipulated testimony of Slocum taken from *Varela v. State,* which was the only evidence offered bearing on the issue.[2]

The trial then concluded:

There is no transcription of the court reporter's notes.

---

**1.** Two other stipulations not mentioned in the court's findings are that Levine left the city at the suggestion of Preston Slocum and other officers, and that Slocum gave money to Levine and suggested Levine leave the city. While these two stipulations are found in an "Evidentiary Stipulation" in the record, it is not clear these stipulations were offered at the hearing.

**2.** Slocum's testimony taken from the opinion in *Varela v. State,* 561 S.W.2d 186 (Tex.Cr.App. 1978), at p. 188 was stipulated. It reads:

"Q (Appellant's counsel): Did you ever have occasion to talk to Mr. Levine about the

"It is my finding as a matter of fact that this does not rise to the level required for the State to be charged with secreting a witness to the offense. The officers did not instigate it, and without that the factual requirements for suppression fails."

Issues concerning the missing witness Levine have been presented to this court a number of occasions. See, e.g., *Hernandez v. State,* 506 S.W.2d 884 (Tex.Cr.App.1974); *White v. State,* 517 S.W.2d 543 (Tex.Cr.App. 1974); *Sigard v. State,* 537 S.W.2d 736 (Tex. Cr.App.1976); *Varela v. State,* 561 S.W.2d 186 (Tex.Cr.App.1978). All of these convictions were affirmed. It appears that Levine, a police informer, assisted undercover agent Chevera in making cases resulting in 144 indictments against 138 individuals.

In *White v. Estelle,* 685 F.2d 927, 928 (5th Cir.1982), the court in affirming the federal district court's judgment granting habeas relief wrote:

"This is another case involving the disappearance of a material witness, the undercover police informant Jimmy Levine.

advisability of him staying in San Antonio, Bexar County, Texas?

"A (Lt. Slocum): Yes, sir.

"Q What were the facts surrounding that conversation?

"A He said—we told him the raid was going to go down and he said he was going to leave town but didn't have any money. I told him I thought that was a good idea. I still think it was a good idea. He said he didn't have any money. I gave Detective Doyal $75.00 for eating money.

"Q You knew when you paid Officer Doyal that $75.00 that that was going to be given to Mr. Levine; he was going to use it to leave town?

"A I sent it out to the man. He said he was leaving town. Now, whether he was going to or not, I don't know.

"Q But, you knew it was to be his advantage to leave town?

"A If I was in his shoes, I would have left town I guarantee you.

"Q And you advised him of the big bust before it went down, right?

"A Yes, he was advised."

3. This court is not bound by the decisions of lower federal courts on federal constitutional questions. *Pruett v. State,* 463 S.W.2d 191, 194 (Tex.Cr.App.1971).

4. In *Sigard v. State,* 537 S.W.2d 736 (Tex.Cr. App.1976), this court wrote:

The disappearance of Levine and the State's role in his disappearance are detailed in *Hernandez v. Estelle,* 674 F.2d 313 (5th Cir.1982), where this court reiterated the rule that the deliberate concealment by the State of a material witness violates due process when the missing witness' testimony 'circumstantially derived from and evaluated in the context of the entire record, would create a reasonable doubt of the defendant's guilt that did not otherwise exist.'"

Applicant apparently relies upon *Hernandez v. Estelle,* supra, and *White v. Estelle,* supra.[3]

The facts as to Slocum's actions are somewhat similar in the instant case as in *White* and *Hernandez.* We disagree, however, with the Fifth Circuit panel's conclusion in *Hernandez* that Slocum was fully aware that his conversation with Levine would render a material witness unavailable *at trial,* and was a *deliberate* State concealment of Levine. We have addressed that issue in other cases.[4] It should be kept in

"Further, we cannot reach the conclusion that Lt. Slocum had the $75.00 delivered to Levine two and one-half years prior to the actual trial of the case in order to conceal evidence and deprive the appellant of the right of compulsory process of witnesses. The appellant had not even been arrested, and no indictment had ever been returned at the time. The record reflects that Slocum's reasons were dictated by his concern for Levine's personal safety and security which would make it a 'good idea' for Levine to leave town prior to the narcotics roundup. As stated in the concurring opinion on the State's motion for rehearing in *White* (517 S.W.2d 543):

"'... It is certainly common knowledge that lives of informers in narcotic cases are in constant danger. The conversation appears to have taken place shortly after Leveine's (sic) activities as an informer had been completed. Upon Leveine's (sic) suggestion that he "needed some money to eat" Slocum sent $75.00 by one of his officers. The amount involved was not sufficient to allow him to travel any great distance or to keep him in food for long.'

Slocum's action cannot be seen as a calculated attempt to deprive this appellant of compulsory process because of Levine's unavailability two and one-half years later. Indeed, Levine's appearance as a witness at future

mind that this was not a situation where the missing witness was being "hidden out" or concealed by the prosecution who knew at all times the whereabouts of the witness. Here Slocum was undoubtedly concerned about the safety of Levine at the time of the narcotics raid. It is easy to say that the police should be concerned about the safety of their employees, but there are other methods of protecting witnesses than the one used when there is no enumeration of the methods and no showing they were available. It should be remembered that not all local law enforcement agencies have available fancy publicly funded witness protection programs as does the federal government.

◼ Even if it is conceded, however, that there was a deliberate concealment by the State, due process is not violated under the *Hernandez* rule of the Fifth Circuit, unless the missing witness' testimony "circumstantially derived from and evaluated in the context of the entire record, would create a reasonable doubt of the defendant's guilt that did not otherwise exist." Like the Fifth Circuit in *Hernandez,* we are in the difficult position of determining the value of Levine's testimony without the benefit of the testimony itself, as one knows, of course, what Levine would say should he suddenly appear over 11 years later. The Fifth Circuit in *Hernandez* indicated that under the circumstances the court could look to the record for circumstantial indicia of what Levine's testimony would be. The court then wrote:

"Levine's state-induced absence *at the time of trial* raises the suspicion at least that he would not have corroborated the

trials would seem to be more assured and likely if he sought safety out of town at the time than if he remained in town at the mercy of alleged narcotics pushers who might be released on bond.

"Further, for the same reasons, we cannot conclude that the appellant was deprived of due process or that the court erred in overruling the motion for the State to produce Levine, his motions to abate or dismiss the prosecution, the motion to suppress evidence or the third motion for continuance based on the absence of Levine, as were the earlier

state's version of the events invoking the disputed purchase of heroin from White on one occasion and from Hernandez on another. *Lockett v. Blackburn,* 571 F.2d [309] at 314 n. 6. Moreover, before White's trial Chevera was evasive and uncooperative as he refused to discuss the role and present location of Levine with White's counsel or investigator. The reluctant attitude lends credence to the proposition that Levine's testimony would not have aided the state." (Emphasis supplied.)

◼ In a post-conviction habeas corpus proceeding, the burden of proof is upon the applicant. *Ex parte Slaton,* 484 S.W.2d 102 (Tex.Cr.App.1972); *Ex parte Bratchett,* 513 S.W.2d 851 (Tex.Cr.App.1974).

As noted on appeal of applicant's conviction, he produced no evidence at trial that police officers caused Levine to leave San Antonio and secrete himself. In the habeas proceedings the only evidence offered on the subject was the stipulated Slocum testimony quoted from the *Varela* opinion.

◼ Even if we could agree, which we do not, that Slocum's testimony shows a *deliberate* concealment by the State of a material witness at the time of trial, there is no showing that Levine's testimony circumstantially derived from and evaluated in the context of the entire record would create a reasonable doubt of the applicant's guilt that did not otherwise exist. We cannot agree with the specious reasoning that the State-induced absence of a witness at the time of trial raises the suspicion that he would not have corroborated the State's version of the events. That type of reasoning is not supported by the facts. Further,

motions. We are here confronted with a case that long pended on the docket of the court while both sides made a diligent effort to locate Levine without success and there was no showing that if the case was continued there would be any chance of locating Levine, and further, neither the State nor the appellant knew for sure what Levine's testimony would be. Under the circumstances, the trial court cannot be faulted for proceeding with the trial almost three years after the alleged offense and over two years after return of the last indictment."

in the instant case there was no dispute in the evidence as to the purchase of heroin by officer Chevera from the applicant unlike *White* and *Hernandez*. Still further, there is nothing to show that Chevera either before trial or during trial was evasive and uncooperative with defense counsel or anyone else about Levine's role or whereabouts. It does not appear that he knew any more about Levine's whereabouts than anyone else even today. Thus, this case is unlike *White* where it was said by the Fifth Circuit in *Hernandez* that Chevera was uncooperative with defense counsel and investigator prior to trial. Further, we cannot agree a reluctant attitude on the part of an undercover agent-witness for the State to cooperate with a defendant's counsel about the role and whereabouts of a missing witness prior to trial lends credence to the proposition that a missing witness' testimony would not have aided the State. Such reasoning is "fantastic."

We cannot agree under the record before us that the applicant has sustained his burden in this habeas corpus proceeding. The relief prayed for is denied.

MILLER, J., concurs.

TEAGUE, Judge, dissenting.

Robert R. Salinas, applicant, asserts in his writ application that his conviction is void because the State, through the actions of Preston Slocum, a San Antonio police officer at the time of applicant's arrest and conviction, rendered a material witness, Jimmie Levine, unavailable to testify on his behalf at his trial.

In *Salinas v. State*, 542 S.W.2d 864 (Tex.Cr.App.1976), in which this Court affirmed applicant's conviction, as well as *Hernandez v. State*, 506 S.W.2d 884 (Tex.Cr.App.1974); *White v. State*, 517 S.W.2d 543 (Tex.Cr.App. 1974), cert. denied, 421 U.S. 1014, 95 S.Ct. 2422, 44 L.Ed.2d 683 (1975); *Sigard v. State*, 537 S.W.2d 736 (Tex.Cr.App.1976); and *Varela v. State*, 561 S.W.2d 186 (Tex. Cr.App.1978), this Court has rejected this same assertion.

However, after this Court affirmed applicant's conviction, the Fifth Circuit Court of Appeals decided *Hernandez v. Estelle*, 674 F.2d 313 (5th Cir.1982), and *White v. Estelle*, 685 F.2d 927 (5th Cir.1982), and granted those defendants relief.

In light of the "Evidentiary Stipulation" that was entered into by the parties in this cause, the trial court record of this cause, and what has been stated by the Fifth Circuit, the only issue before this Court is whether, in light of *Hernandez v. Estelle*, supra, and *White v. Estelle*, supra, applicant is entitled to relief. Also see *United States v. Valenzuela-Bernal*, 458 U.S. ——, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). Because of what is before this Court *at this time*, and further because there is factually no substantial difference between this cause and *Hernandez v. Estelle*, supra, as well as *White v. Estelle*, supra, applicant is entitled to relief.

By what is in the record before this Court, and what has been stated in the above decisions of the Fifth Circuit, it is clear that Levine would have been a material witness for applicant and that the actions of Slocum caused Levine not to be available at applicant's trial. In *Hernandez v. Estelle*, supra, the Fifth Circuit stated the following: "Deliberate concealment by the state of a material witness is a prima facie deprivation of due process, which ripens into a constitutional error upon a showing that the missing witness' testimony, when evaluated in the context of the entire record, would create a reasonable doubt of guilt that did not otherwise exist." 674 F.2d at 315. Because Levine would have testified that applicant did not sell the heroin to Chevera, another San Antonio police officer at the time of applicant's arrest and conviction, this without a doubt established prejudice to applicant. I find that Levine's proffered testimony, if believed, would have created in the minds of a rational trier of facts a reasonable doubt about applicant's guilt. Applicant is entitled to relief.

However, a majority of this Court refuses to grant applicant relief. The majority appears to hang its decision to deny applicant

relief on the past holdings that this Court has made on the issue before us today. I find that the past holdings of this Court are contrary to what the Fifth Circuit has held in *Hernandez v. White,* supra, and *White v. State,* supra, and, for the reasons stated in those two decisions, all cases of this Court holding to the contrary should be overruled.

The majority states the following in its opinion: "[N]ot all local law enforcement agencies have available fancy publically funded witness protection programs as does the federal government." This may be true. However, overlooked by the majority in its statement, but as pointed out by Judge Odom in his dissenting opinion in *Sigard v. State,* supra, "Other means are available for the protection of a material witness than sending him out of town and rendering him totally unavailable to either party." (537 S.W.2d at 741). At a minimum, rather than independently approving Levine's leaving town, I believe that it was incumbent upon Slocum to implicate the judiciary in that decision making process. See Art. 24.24, V.A.C.C.P. This is simply another reason why applicant is entitled to relief.

To the majority's denying applicant relief, I respectfully dissent.

ODOM and CLINTON, JJ., join.