NUMBER 13-99-574-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


____________________________________________________________________


JOSE JIMENEZ, Appellant,


v.



THE STATE OF TEXAS, Appellee.

____________________________________________________________________


On appeal from the 36th District Court of San Patricio

County, Texas.

____________________________________________________________________


O P I N I O N



Before Justices Hinojosa, Chavez, and Rodriguez


Opinion by Justice Hinojosa



 After a bench trial, the trial court found appellant, Jose Jimenez,
guilty of two counts of aggravated assault, affirmatively found that a
deadly weapon had been used, and assessed his punishment for each
count at twelve years imprisonment. Appellant's court-appointed
counsel filed a brief in which he concludes that a "review of the trial
proceedings reveals no error which would require a new trial." Counsel
filed a motion to withdraw and informed appellant that he had the right
to file his own brief. Appellant has filed a pro se brief in which he
challenges the trial court's judgment by seven points of error. Appellant
contends that: (1) the trial court erred in not allowing him to proceed to
trial by jury "due to promise made not kept;" (2) the trial court erred in
not allowing him to question his trial counsel about a promise that he
would get community supervision if he waived his right to trial by jury;
(3) the trial court erred in allowing the State to withhold evidence
favorable to him; (4) the trial court erred in denying his pro se motion
for new trial "based on the merits presented in" his first three points of
error; (5) the trial court erred in violating the ex post facto clause by
applying a new law that was punitive in nature; (6) his "appointed
counsel denied [him] effective assistance of counsel due to his indigent
status on his Pro se Motion for New Trial;" and (7) his "appointed
counsel denied [him] effective assistance of counsel on appeal due to
his indigent status." We affirm.

A. Background and Procedural History


 Appellant was charged by indictment with two counts of
aggravated assault with a deadly weapon after he shot Robert Ramos
and Martin Benavides, Jr., at La Baby Doll Lounge in Aransas Pass. 
Appellant waived his right to a jury trial. The case was tried to the
court, and appellant was found guilty of both counts on June 4, 1999. 
On June 21, 1999, appellant filed a pro se motion for new trial, alleging
that he had not knowingly and intelligently waived his right to a jury
trial because his trial counsel had told him the trial court would
"probably" sentence him to community supervision. On July 23, 1999,
the trial court assessed his punishment for each count at twelve years
imprisonment and affirmatively found that a deadly weapon had been
used.

 Appellant's first appellate counsel was appointed by the court on
July 28, 1999. On August 2, 1999, appellant filed an amended pro se
motion for new trial. The motion was presented to the court on October
1, 1999, but an attorney who was substituting for appellant's counsel
was not prepared to present evidence concerning appellant's claim that
he had received ineffective assistance of counsel at trial. The trial court
offered to allow appellant to testify, but appellant stated, through
counsel, that he preferred to do so by affidavit. The trial court granted
appellant's request to supplement the record with affidavits and ordered
that they be filed on or before October 5, 1999. The State did not
object.

 On October 5, 1999, appellant filed a third motion for new trial
with his affidavit and the affidavits of his trial counsel and the owner of
La Baby Doll Lounge. A written order denying appellant's motion for
new trial was signed October 22, 1999, but the motion was overruled
by operation of law when no written order granting a new trial was
signed on or before October 6, 1999, the seventy-fifth day after the
sentence was imposed. See Tex. R. App. P. 21.8(c). Appellant timely
filed a pro se notice of appeal on September 9, 1999. On November 30,
1999, the trial court appointed appellant's present counsel to represent
him in this appeal.

B. What is Properly Before this Court?


 Because several of appellant's points of error pertain to matters
outside the record, we must first determine what evidence is properly
in the appellate record before us.

(1) Motions for New Trial


 The rules of appellate procedure set forth the requirements for
filing and amending motions for new trial:

21.4 Time to File and Amend Motion.


(a) To File. The defendant may file a motion for new trial
before, but no later than 30 days after, the date when the
trial court imposes or suspends sentence in open court.


(b) To Amend. Within 30 days after the date when the trial
court imposes or suspends sentence in open court but
before the court overrules any preceding motion for new
trial, a defendant may, without leave of court, file one or
more amended motions for new trial.


Tex. R. App. P. 21.4. An amended motion for new trial is not permitted
more than thirty days after sentencing, even with leave of court. 
Dugard v. State, 688 S.W.2d 524, 530 (Tex. Crim. App. 1985),
overruled on other grounds, Williams v. State, 780 S.W.2d 802, 803
(Tex. Crim. App. 1989); Flores v. State, 18 S.W.3d 796, 798 (Tex.
App.--Austin 2000, no pet. h.); Pena v. State, 767 S.W.2d 206, 207
(Tex. App.--Corpus Christi 1989, no pet.). Even where the original
motion for new trial is timely, an untimely amended motion for new trial
is a nullity and cannot form the basis for points of error on appeal. 
Dugard, 688 S.W.2d at 529-30; Guevara v. State, 4 S.W.3d 771, 780
(Tex. App.--San Antonio 1999, no pet.); Rangel v. State, 972 S.W.2d
827, 838 (Tex. App.--Corpus Christi 1998, pet. ref'd). 

 Although it is not statutorily required that a motion for new trial
be supported by affidavits, it is well settled that when the grounds for
a new trial are outside the record, the movant must support his motion
by his own affidavit or by the affidavit of someone with knowledge of
the relevant facts. Reyes v. State, 849 S.W.2d 812, 816 (Tex. Crim.
App. 1993); Bearden v. State, 648 S.W.2d 688, 690 (Tex. Crim. App.
1983). Both the motion for new trial and any supporting affidavits must
be filed within the thirty-day deadline. Mallet v. State, 9 S.W.3d 856,
865 (Tex. App.--Fort Worth 2000, no pet. h.). Filing affidavits in
support of a motion for new trial more than thirty days after sentencing
is imposed is considered an untimely attempt to amend the motion for
new trial. Dugard, 688 S.W.2d at 529-30; Mallet, 9 S.W.3d at 865;
Flores, 18 S.W.3d at 798.

 Here, appellant timely filed his first pro se motion for new trial and
his amended pro se motion for new trial. However, under the rules of
appellate procedure, appellant's third motion for new trial, filed on
October 5, 1999, was not timely filed and is not properly before us.

(2) Affidavits Filed on October 5, 1999


 At the October 1 hearing, the trial court expressly authorized
appellant to file affidavits in support of his motion for new trial on or
before October 5, and the State did not object.

 Allegations in a motion for new trial do not prove themselves. 
Vaughn v. State, 456 S.W.2d 141, 142 (Tex. Crim. App. 1970). 
Appellate rule 21.7, entitled "Types of Evidence Allowed at Hearing [on
motion for new trial]," states that the trial court "may receive evidence
by affidavit or otherwise." Tex. R. App. P. 21.7. However, an affidavit
itself is not evidence, but must be introduced as such at the hearing on
the motion for new trial. See McIntire v. State, 698 S.W.2d 652, 658
(Tex. Crim. App. 1985); Rios v. State, 510 S.W.2d 326, 328-29 (Tex.
Crim. App. 1974) (affidavit attached to motion for new trial is only a
pleading that authorizes the introduction of supporting evidence; it is
not evidence in itself, and must be introduced as such at the hearing on
the motion). See also Adams v. State, 765 S.W.2d 479, 481 (Tex.
App.--Texarkana 1988, pet. ref'd) (the affiant must testify and be
subject to cross-examination) (citing Rios, 510 S.W.2d at 326, and
Stephenson v. State, 494 S.W.2d 900 (Tex. Crim. App. 1974)). 

 However, in this case the trial court expressly authorized
admission of the affidavits without proper introduction, and the State
did not raise any objection. The determination of admissibility of
evidence is within the sound discretion of the trial court. Jackson v.
State, 575 S.W.2d 567, 570 (Tex. Crim. App. 1979). That determination
will not be reversed on appeal unless a clear abuse of discretion is
shown. Werner v. State, 711 S.W.2d 639, 643 (Tex. Crim. App. 1986). 
However, error may not be predicated upon a ruling which admits
evidence unless a substantial right of the party is affected, and a timely
and proper objection is made. See Tex. R. Evid. 103(a); see also Tex. R.
App. P. 33.1 (failure to make a timely and proper objection waives an
issue for appeal). We hold the affidavits filed on October 5, 1999,
which were authorized by the trial court without any objection by the
State, were properly before the trial court for its consideration of
appellant's motion for new trial.

 C. The Record Before this Court


(1) Reporter's Record


 The State presented evidence that appellant was at La Baby Doll
Lounge in the early morning hours of September 7, 1998, with his
girlfriend and another couple. Appellant was involved in a physical
altercation with some other men at the bar, including one of the
shooting victims, Martin Benavides, and the brother of the other victim. 
Appellant sustained a gash on his head, and the police were called. 
When the police arrived, they found a lot of people yelling at each other
in the parking lot outside the lounge. Appellant was bleeding from his
head and was placed in the backseat of a police car. Appellant said he
did not want to file charges, but he threatened to kill at least one of the
men with whom he had fought. Although appellant appeared very
intoxicated, the police released him to the custody of his companions,
with the understanding that they would drive him to a hospital for
treatment of his head wound. Appellant appeared at the lounge a short
time later and asked the men with whom he had fought earlier to step
outside. When the men refused, appellant pulled out a long-barreled,
large-caliber chrome revolver and shot twice, injuring Benavides and
Robert Ramos.(1) No one else at the lounge displayed a weapon.

 The defense called two witnesses, appellant and a girlfriend who
accompanied him to La Baby Doll that night. The girlfriend testified the
fight occurred after the other men made vulgar comments to appellant
about her. After the fight, appellant refused to be taken to the hospital
and insisted on driving her car. After dropping off the other couple,
appellant tried to find some of his friends, but he did not find them at
home. He drove to a bank parking lot, told his girlfriend to wait, and left
on foot. Shortly thereafter, he returned to the car, and they drove off. 
She did not see appellant with a gun at any time that night.

 Appellant testified that the fight started after one of the other men
said some very vulgar things to him about his girlfriend. Several men
attacked him, and he grabbed a pool cue to defend himself. He was hit
over the head with a beer bottle at least once. After he and his
companions left the bar, he dropped off the other couple and tried to
find some friends because: 

I was angry, and I wanted -- I guess you could say I wanted
to start a fight with the people that beat on me, and I
wanted to bring a friend with me, at least one or two friends
to go back and confront them again. 


He returned to the bar alone after leaving his girlfriend in the car
because:


I was angry, and I guess you could say I wanted revenge for
what happened to me. I was humiliated, my girlfriend was
hysterical in tears, and I felt -- like I said, I felt really
humiliated what happened, sir, and I wanted some kind of
revenge on these people. 


He testified that when he arrived at the bar, he began to wrestle with
Benavides, who reached under his shirt and pulled out a gun out of his
waistband. 

And at that moment he had backed off, and we started to
wrestle, and we fell to the floor. The gun had discharged,
the gun fired one time, sir.


Appellant said he never touched the gun and did not know how Ramos
was shot.

(2) Appellant's Affidavit. 


 According to the affidavit, appellant stated that he would not have
waived his right to a jury trial except that his trial counsel wrongly told
him he could receive community supervision only from the judge,(2) not
the jury,(3) and that the judge would "probably" sentence him to
community supervision. Appellant contended his trial counsel was
ineffective because he failed to file "evidentiary motions," failed to
investigate appellant's claim of self-defense, and failed to present
evidence of the victim's bad character, to support appellant's claim of
self-defense. He further contended that his first appellate counsel was
ineffective because he failed to appear at the motion for new trial
hearing and obtain testimony from appellant's trial counsel and Paul
Torres, the owner of La Baby Doll Lounge. 

(3) Trial Counsel's Affidavit


 Trial counsel's affidavit states that he conferred with appellant:

at length regarding the option of proceeding to trial of this
case before a jury or before the bench. Prior to executing
any waivers in this case I advised Jose Jimenez and
discussed with him the advantages and disadvantages of
bench trial versus jury trial. I did also, prior to executing any
waiver of jury, discuss with Jose Jimenez the fact that he
would not be eligible for probation from the judge in a bench
trial if Mr. Jimenez were to be found guilty and a deadly
weapon finding were made. I did also advise my client, Mr.
Jimenez, that a deadly weapon finding would be automatic
if he were found guilty of aggravated assault as charged in
the indictment. After a full discussion of his options Jose
Jimenez freely and voluntarily made an informed decision to
proceed with this case as a trial to the Court and waive a
jury trial. Jose Jimenez freely, knowingly and intelligently
made the decision to execute a waiver of jury trial and he
wanted me to join in his waiver of jury trial.


 I further advised Jose Jimenez that the deadly weapon
finding would be made, if he were found guilty of the
indicted charge, because a firearm or handgun is a deadly
weapon regardless of the seriousness of the injury to a
victim. I believed, and Jose Jimenez believed, that his best
course of trial was to not go before a jury but have this case
tried to a judge -- even knowing and advising Mr. Jimenez
that he could not then receive probation consideration.


 I did investigate this case, as is my duty as attorney for
the defendant, as requested by Jose Jimenez and followed
up on information provided to me by Mr. Jimenez that he
thought would be helpful to his defense. The Court did
provide the defense with funds to hire an investigator. I
hired investigator KEVIN D. BEHR to assist with the
investigation and preparation for trial of this case. As
reported to me by Mr. Behr, he interviewed at least six (6)
witnesses from the scene and none of these witnesses were
beneficial to Jose Jimenez. Specifically, the bar owner,
PAUL TORRES, stated to the investigator and to police that
he did not see the shooting and that his statement to the
police was true and correct and that was what he could
testify to in court. I did not consider Paul Torres to be in any
way helpful to the defense of Mr. Jimenez. And did not
consider it to be harmful that Mr. Torres did not testify,
either for the prosecution or the defense. I am attaching a
copy of the statement of Paul Torres for reference.


(4) Affidavit of Paul Torres



 In his affidavit, Paul Torres, the owner of La Baby Doll Lounge,
said he saw the aftermath of the first altercation appellant was involved
in at the lounge that night. He heard appellant tell one man in Spanish
that "he was going to get him." He later heard two gunshots, but he
did not see the shooting or the events occurring just prior to it.

D. Voluntariness of Waiver of Jury Trial


 In his first point of error, appellant contends his waiver of a jury
trial was involuntary because his trial counsel told him that if he agreed
to a bench trial, the judge would impose a sentence of community
supervision. 

 No person may be convicted of a felony except upon the verdict of
a jury, unless the defendant has waived the right of a jury trial; the
waiver must be made in person by the defendant in writing in open
court with the consent and approval of the court, and the attorney
representing the State. Tex. Code Crim. Proc. Ann. art. 1.13 (Vernon
Supp. 2000); Hatch v. State, 958 S.W.2d 813, 814 (Tex. Crim. App.
1997); Shaffer v. State, 769 S.W.2d 943, 944-45 (Tex. Crim. App.
1989). Additionally, the waiver of a constitutional right must be a
voluntary, knowing and intelligent act. Brady v. United States, 397 U.S.
742, 748 (1970). A jury trial waiver is voluntary and knowing when it
is signed by the defendant after discussing with counsel the
advantages and disadvantages of a jury trial. Hoang v. State, 825
S.W.2d 729, 732 (Tex. App.--Houston [14th Dist.] 1992, pet ref'd).

 When the record shows a constitutional right was waived after
proper admonishment, there is a prima facie showing that the waiver
was knowing and voluntary. Ex parte Williams, 704 S.W.2d 773, 775
(Tex. Crim. App. 1986); Edwards v. State, 921 S.W.2d 477, 479 (Tex.
App.--Houston [1st Dist.] 1996, no pet.) (addressing claims of
involuntary waiver of jury trial and involuntary plea of guilty). The
burden then shifts to the defendant to show that he waived his
constitutional right without understanding the consequences. Fuentes
v. State, 688 S.W.2d 542, 544 (Tex. Crim. App. 1985); Edwards, 921
S.W.2d at 479. Such waiver will be involuntary only if the appellant
shows affirmatively that he was unaware of the consequences of his
waiver, and that he was misled or misinformed. Williams, 704 S.W.2d
at 775.

 In this case, the clerk's record and the reporter's record show
appellant voluntarily executed a written waiver of his right to a trial by
jury after being admonished regarding his right to a jury trial. The
waiver was approved by the trial court and by the prosecutor. The
waiver constitutes prima facie evidence that appellant's waiver of his
right to trial by jury was knowing and voluntary. The burden of proof
then shifted to appellant to prove otherwise.

 The record before us contains conflicting evidence concerning
what appellant's trial counsel told him about his eligibility for
community supervision. According to appellant, trial counsel told him
the trial court could give him probation. Trial counsel, however, said he
told appellant the trial court could not sentence him to community
supervision if it found him guilty of aggravated assault with an
affirmative finding of use of a deadly weapon. We conclude appellant
has not met his burden of proving his waiver of his right to a jury trial
was involuntary.

E. Ineffective Assistance of Trial Counsel


 In his first issue, appellant also contends he received ineffective
assistance of counsel at trial.

 Claims of ineffective assistance are analyzed under the rule set
forth in Strickland v. Washington, 466 U.S. 668 (1984), and adopted by
Texas in Hernandez v. State, 726 S.W.2d 53, 56-56 (Tex. Crim. App.
1986). The Strickland test is the benchmark for judging whether
counsel's conduct has so undermined the proper functioning of the
adversarial process that the trial cannot be relied on as having produced
a reliable result. Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim.
App. 1999) (citing McFarland v. State, 845 S.W.2d 824, 843 (Tex. Crim.
App. 1992)). The appellant must first show his trial counsel's
performance was not reasonably effective, falling below an objective
standard of reasonableness under the prevailing professional norms. 
Strickland, 466 U.S. at 694; Thompson, 9 S.W.3d at 812-13. A
showing of deficiency requires a demonstration that the trial counsel
made errors so serious that he was not functioning as the counsel
guaranteed a defendant under the Sixth Amendment. Strickland, 466
U.S. at 687. We must presume that counsel is better positioned than
the appellate court to judge the pragmatism of the particular case, and
that counsel made all significant decisions in the exercise of reasonable
professional judgment. Young v. State, 991 S.W.2d 835, 837 (Tex.
Crim. App. 1999). There is also a strong presumption that the trial
counsel's conduct was reasonable and constitutes sound trial strategy. 
Strickland, 466 U.S. at 689; McFarland v State, 845 S.W.2d at 843. 
The "reasonably effective assistance" standard does not mean errorless
counsel. Ex parte Felton, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991);
Hernandez v. State, 799 S.W.2d 507, 508 (Tex. App.--Corpus Christi
1991, pet. ref'd). 

 If the appellant can demonstrate deficient assistance under the
first part of the Strickland test, he must then show that there is a
reasonable probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different. Strickland, 466 U.S.
at 694; Thompson, 9 S.W.3d at 812; Washington v. State, 771 S.W.2d
537, 545 (Tex. Crim. App. 1989). "A reasonable probability" means "a
probability sufficient to undermine confidence in the outcome." 
Strickland, 466 U.S. at 694; Thompson, 9 S.W.3d at 812; Ex parte
Walker, 777 S.W.2d 427, 430 (Tex. Crim. App. 1989). The prejudice
element requires a showing that the trial counsel's errors were so
serious as to deprive the defendant of a fair trial; one whose result is
reliable. Strickland, 466 U.S. at 687. The totality of the representation
is evaluated from counsel's perspective at trial, not his isolated acts or
omissions in hindsight. Ex parte Welborn, 785 S.W.2d 391, 393 (Tex.
Crim. App. 1990); Wilkerson v. State, 726 S.W.2d 542, 548 (Tex. Crim.
App. 1986). 

 The assessment of whether a defendant received effective
assistance of counsel must be made according to the facts of each case. 
Ex parte Scott, 581 S.W.2d 181, 182 (Tex. Crim. App. 1979); Stone v.
State, 17 S.W.3d 348, 350 (Tex. App.--Corpus Christi 2000, no pet. h.). 
The appellant must prove his claim of ineffective assistance of counsel
by a preponderance of the evidence. Stafford v. State, 813 S.W.2d 503,
506 (Tex. Crim. App. 1991). Furthermore, he must show ineffective
assistance firmly rooted in the record. Jackson v. State, 877 S.W.2d
768, 771-72 (Tex. Crim. App. 1994). We may not speculate as to the
reasons behind trial counsel's actions nor should we try to second
guess trial counsel's tactical decisions which do not fall below the
objective standard of reasonableness. Young, 991 S.W.2d at 837-38;
Solis v. State, 792 S.W.2d 95, 100 (Tex. Crim. App. 1990); Stone, 17
S.W.3d at 350.

 Specifically, appellant alleges his trial counsel was ineffective
because he (1) failed to investigate the case, (2) failed to call more
defense witnesses, and (3) failed to adduce testimony of the victims'
bad character. Based on the evidence before us, we conclude appellant
has not proved that he received ineffective assistance of counsel at trial. 
Indeed, the record before us shows appellant's trial counsel's actions
were reasonable.

 The record shows that trial counsel did investigate the case
according to appellant's wishes. He filed motions requiring the State
to disclose all exculpatory material and to provide him with a list of all
potential witnesses. Trial counsel obtained funding from the trial court
to hire an investigator, who interviewed witnesses named by appellant. 
None of the witnesses corroborated appellant's account that the
shooting was either accidental or in self-defense. The trial record
shows four eyewitnesses testified that appellant did not act in self-defense, but instead pulled out a large revolver without adequate
provocation and fired twice into a crowded room. Thus, there is no
evidence that trial counsel was ineffective for failing to call additional
defense witnesses or for failing to investigate the case properly.

 The clerk's record shows that trial counsel filed motions requiring
the State to provide the criminal history of all its testifying witnesses. 
Appellant has produced no evidence, other than his own affidavit, that
the victims were of a bad or violent character, or had criminal histories. 
Based on the record before us, we hold appellant did not receive
ineffective assistance of counsel at trial. We overrule appellant's first
point of error.

F. Inability to Question Trial Counsel Under Oath


 In his second point of error, appellant contends the trial court erred
by not allowing him to question his trial counsel, under oath,
concerning the alleged promise that appellant would be sentenced to
community supervision if he waived his right to a jury trial.

 The record reflects appellant did not object to the trial judge's
decision to rule on the motion for new trial on affidavits alone. 
Therefore, he has waived this issue on appeal. See Tex. R. App. P. 33.1
(making a contemporaneous objection is required to preserve an issue
for appeal, as well as obtaining a ruling on the objection).

 Furthermore, it is the responsibility of the proponent of live
testimony, not the trial court, to procure the presence of necessary
witnesses. The trial court cannot be said to have erred in failing to
permit examination of a witness whose presence the proponent failed
to procure. Appellant's second point of error is overruled.

G. Withholding of Exculpatory Evidence


 In his third point of error, appellant complains the State withheld
exculpatory evidence, specifically the testimony of Paul Hernandez
Torres, the owner of La Baby Doll Lounge. He contends Torres could
have testified to the violent nature of the two victims and that they were
gang members who had participated in a fatal beating of a man at La
Baby Doll just four months before this incident.

 One of the cornerstones of our criminal justice system is the
government's duty to disclose exculpatory evidence; suppression of
favorable evidence by the prosecution results in a violation of the
defendant's right to due process under the Fourteenth Amendment. 
Brady v. Maryland, 373 U.S. 83, 87 (1963). However, there is no
constitutional requirement that the prosecution disclose all information
which might be useful in contradicting unfavorable testimony. 
Pennsylvania v. Ritchie, 480 U.S. 39, 52-57 (1987). 

 To invoke Brady, the accused must present evidence that: (1) the
prosecution suppressed or withheld evidence; (2) this evidence would
have been favorable to the accused; and (3) this evidence would have
been material to the accused's defense. Page v. State, 7 S.W.3d 202,
206 (Tex. App.--Fort Worth 1999, no pet.); Cruz v. State, 838 S.W.2d
682, 686 (Tex. App.--Houston [14th Dist.] 1992, pet. ref'd). The State's
duty to disclose exculpatory material encompasses impeachment
evidence if the evidence is admissible under the rules of evidence. 
United States v. Johnson, 872 F.2d 612, 620 (5th Cir. 1989). The duty
also encompasses evidence of the existence of material witnesses;
where the State conceals a material witness whose testimony is shown
to create a reasonable doubt of guilt that did not otherwise exist, there
is a deprivation of due process. Hernandez v. Estelle, 674 F.2d 313,
317 (5th Cir. 1981). Therefore, the action of the State in contributing to
the absence of a material witness can constitute the suppression of
evidence. White v. State, 517 S.W.2d 543, 546-48 (Tex. Crim. App.
1974)(op. on reh'g). A constitutional violation occurs only when the
State is directly responsible for the witness's absence. See United
States v. Henao, 652 F.2d 591, 594 (5th Cir. 1981); Hernandez, 674
F.2d at 317.

 In this case, the reporter's record reveals the following colloquy
occurred after the State rested on April 30, 1999:

Defense Counsel: Your Honor, I had wanted to call some
witnesses that the State had
subpoenaed, and I need to discuss
that with my client before putting on
my case.


The Court: Take your time.


Defense Counsel: Your Honor, if I could go back on the
record. Judge, we wanted to call the
gentleman, the owner of the bar. I
think his name is -- last name is
Torres, I believe; and also a Nancy
Guerrero that was made mention to
[sic]. They're the State's witnesses,
Judge, and have been subpoenaed. 
We would want to be able to call them
as witnesses.


The Court: Are they here?


Prosecutor: They're on standby. I told [defense
counsel] this morning when we
discussed that I did not intend to call
them.


The Court: Okay. If you'll contact them and find out
how long it will take them to get here.


 The court then recessed. When the court reconvened, appellant
presented the testimony of Nancy Guerrero, the girlfriend who
accompanied appellant to the lounge on the night of the shooting. After
her testimony, the following occurred:

The Court: Okay, you're excused. Have you heard from
Mr. Torres?


Ms. Mettlach:(4) I called dispatch about two minutes before
we started the hearing and called probably
about five minutes ago, and they're still
trying to find him. Left a message with his
roommate. They have some officers looking
for him. No luck.


The Court: Okay. When would you like to conclude
this trial?


Prosecutor: Whatever the pleasure of the Court
[sic].


The Court: Reset the case for conclusion at 1:30 on
May 10th.


Defense Counsel: Your Honor, that's Monday?


The Court: Yes.


Defense Counsel: That will be perfect.


The Court: If you need a new subpoena for Mr. Torres
and any other witnesses, Mr. Santos, I'm
going to urge you to issue new subpoenas
for anybody you want to have so you don't
have to be relying on State subpoenas.


Defense Counsel: Judge, I may see if I can get an
investigator that did some work on
this case to possibly do that so we can
get it done a lot faster.


The Court: No problem. See you at 1:30 on the 10th.


When the trial was reconvened June 4, 1999, no mention was made of
Torres, and appellant did not call him to testify.

 The record clearly shows that appellant knew of the existence of
Mr. Torres, and that the State had subpoenaed Torres, but then decided
not to call him as a witness. The trial was recessed, and the trial court
specifically urged appellant to procure another subpoena for Torres and
any additional witnesses he wished to call. When the trial reconvened
some five weeks later, appellant did not call Torres as a witness, and
made no objection to or even mentioned his absence. Furthermore,
there is no evidence in the record that Torres had any knowledge of the
victims' bad character, or of any extraneous bad acts by the victims. 
We hold there is no evidence that the State withheld any exculpatory
evidence with respect to Torres. Appellant's third point of error is
overruled.

H. Denial of Motion for New Trial


 By his fourth point of error, appellant contends the trial court erred
in denying his pro se motion for new trial "based on the merits of the
errors presented" in his first, second, and third points of error. 

 The granting or denial of a motion for new trial is entrusted to the
discretion of the trial court. Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim.
App. 1995); State v. Gonzalez, 855 S.W.2d 692, 696 (Tex. Crim. App.
1993). The only question on appeal is whether the trial court's decision
was clearly wrong and outside the zone of reasonable disagreement. 
Gonzalez, 855 S.W.2d at 695 n. 4. The test has been stated as being
"a question of whether the court acted without reference to any guiding
rules and principles." Montgomery v. State, 810 S.W.2d 372, 380 (Tex.
Crim. App. 1990). The reviewing court should not substitute its
judgment for that of the trial court, but should only decide whether the
trial court's decision was arbitrary or unreasonable. Lewis, 911 S.W.2d
at 7; State v. Dixon, 893 S.W.2d 286, 288 (Tex. App.--Texarkana 1995,
no pet.). It is well established that when there is conflicting evidence
on an issue presented at a hearing on a motion for new trial, the trial
court does not abuse its discretion in overruling the motion. Russell v.
State, 711 S.W.2d 114, 116 (Tex. App.--Houston [14th Dist.] 1986, pet.
ref'd). We have overruled appellant's first, second and third points of
error. We also overrule his fourth point of error.

I. Violation of Ex Post Facto Clause


 In his fifth point of error, appellant contends the trial court erred
in applying a new law to his request for an appeal bond in violation of
the ex post facto clause. See U.S. Const. art. I, § 10, cl. 1("No State
shall . . . pass . . . any ex post facto law); Tex. Const. art 1, § 16 ("No
bill of attainder, ex post facto law, retroactive law . . . shall be made.").

 When a court makes an ex post facto analysis, it should be
concerned solely with whether a statute assigns more disadvantageous
criminal or penal consequences to an act than did the law in place
when the act occurred. Weaver v. Graham, 450 U.S. 24, 29 n. 3 (1981);
Grimes v. State, 807 S.W.2d 582, 587 (Tex. Crim. App. 1991).

 Appellant filed a pro se motion for an appeal bond with his first
pro se motion for new trial on September 21, 1999, but did not urge his
motion for an appeal bond at the sentencing hearing on September 23,
1999. At the hearing on the motion for new trial held on October 1,
1999, the following occurred:

Defense Counsel: And one final point, he is eligible for
an appeal bond and would request the
Court to assign an appeal bond
amount while we're here today.


The Court: You want to put on evidence or you're
just asking?


Defense Counsel: I'm just asking you to set a bond
amount.


The Court: State have a request [sic]?


Prosecutor: Judge, we would -- has there been an
appeal, notice of appeal?


The Court: Well, there is a motion for new trial, I
don't know if that's the same or not.


Defense Counsel: I believe there is a notice of appeal.(5)


Prosecutor: I believe it was insufficient.


The Court: If it's in writing, it's pro se, I guarantee
you the Court of Appeals will find it's
plenty sufficient.


The Prosecutor: We would -- 


The Court: They passed a new statute, and this is
the question I have to ask: It's my
understanding as of September 1st,
there is a new statute that says -- in
the Code of Criminal Procedure it says
if you're convicted of a second degree
aggravated assault using a deadly
weapon, that you're no longer eligible
for appeal bonds if you get more than
ten years.


Now that may be one of those ex post facto
statutes and may apply only to offenses
committed after September 1st, but they
may view that as -- that may be viewed
otherwise. And before I set bond, I need to
look at the new statutes, but I know there is
some new legislation concerning availability
or allowance of appeal bonds in certain
scenarios, and they reduced the amount of
-- the number of years, depending on the
offense committed. And let me look at that
before I say. Otherwise I will go on the
record as indicating if he's -- if it's
appropriate and he's available, I'll set his
appeal bond at $30,000 surety.


The Prosecutor: Yes, sir.


The Court: But I'm telling you that that's what I
will set if appropriate, but I need to
verify what the status of that new --
that new addendum, as it were, to the
Code of Criminal Procedure is. But
otherwise it will be set at 30 if he's
eligible.


The record shows that on October 28, 1999, the trial court set an
appeal bond for appellant in the amount of $50,000 cash or surety.

 Appellant now claims a new criminal statute was applied to him
retroactively in violation of the ex post facto clause of the constitution. 
However, because the trial court set an appeal bond for appellant, we
conclude the new law was not applied to him. In other words, if the
trial court had applied the new statute, it would not have granted
appellant an appeal bond.

 The version of article 44.04 of the code of criminal procedure in
effect at the time of appellant's first request for an appeal bond was: 

(b) The defendant may not be released on bail pending the
appeal from any felony conviction where the
punishment exceeds 15 years confinement . . . but
shall immediately be placed in custody and the bail
discharged.


Act of 1991, 72nd Leg., ch. 14, § 284(50) (amended 1999) (current
version at Tex. Code Crim. Proc. Ann. art. 44.04 (Vernon Supp. 2000)). 
However, article 44.04 was amended effective September 1, 1999, and
now states:

The defendant may not be released on bail pending the
appeal from any felony conviction where the punishment
equals or exceeds 10 years confinement or where the
defendant has been convicted of on offense listed under
Section 3g(a)(1), Article 42.12, but shall immediately be
placed in custody and the bail discharged.


Tex. Code Crim. Proc. Ann. art. 44.04 (Vernon Supp. 2000). The
legislature provided that the amended version of article 44.04:

applies only to a request for bail pending appeal that is made
by a defendant on or after the effective date of this Act. A
request for bail pending appeal that is made by a defendant
before the effective date of this Act is covered by the law in
effect when the request was made, and the former law is
continued in effect for that purpose.


Act of 1999, 76th Leg., ch. 546, § 2.

 The trial court assessed appellant's punishment at twelve years
imprisonment for each count. Appellant was eligible for an appeal bond
under the prior version of article 44.04, but he is ineligible under the
current version. Because the trial court set an appeal bond of $50,000,
we conclude it applied the prior version of article 44.04. Thus, the trial
court could not have violated the ex post facto clause. Appellant's fifth
point of error is overruled.

J. Ineffective Assistance of Appellate Counsel


 In his sixth point of error, appellant complains he received
ineffective assistance of appellate counsel in connection with his motion
for new trial. In his seventh point of error, appellant contends he
received ineffective assistance of counsel on appeal.

 We have already set out above the applicable standards of review
for claims of ineffective assistance of counsel. These demanding
standards are virtually impossible to meet when no proper evidentiary
record was developed at a hearing on a motion for new trial. As the
court of criminal appeals noted recently: "[a] substantial risk of failure
accompanies an appellant's claim of ineffective assistance on direct
appeal. . . . In a majority of instances, the record on direct appeal is
simply undeveloped and cannot adequately reflect the failings of trial
counsel." Thompson, 9 S.W.3d at 813-14. The reason an adequate
record is so important in these cases is because in the absence of such
a record, the court must apply the strong presumption that counsel's
performance was a part of trial strategy, and typically will not second-guess a matter of trial strategy. Young, 991 S.W.2d at 837; Stone, 17
S.W.3d at 350. 

 There is no evidence in the record before us about what appellate
counsel's strategy may have been. We are, thus, unable "to second-guess . . . counsel's tactical decisions which do not fall below the
objective standard of reasonableness." See Young, 991 S.W.2d at 837-38; Vasquez v. State, 830 S.W.2d 948, 950-51 (Tex. Crim. App. 1992). 
All we can do is determine from the record before us if the complained-of actions "fall below the objective standard of reasonableness." 
Young, 991 S.W.2d at 837-38.

 Where the record before us affirmatively demonstrates that
counsel took some action in defending his client that no reasonably
competent attorney could have believed constituted sound trial strategy,
the defendant has shown he received ineffective assistance of counsel. 
Stone, 17 S.W.3d at 353; see also Campbell v. State, 2 S.W.3d 729,
734 (Tex. App.--Houston [14th Dist.] 1999, pet. granted on other
grounds)("[I]f a silent record clearly indicates no reasonable attorney
could have made such trial decisions, to hold counsel ineffective is not
speculation.").

 Here, the record before us is silent as to any strategy employed by
appellant's first appellate counsel in connection with the motion for
new trial, and we are not permitted to speculate. In the absence of any
such evidence, we must apply the strong presumption set forth above. 
Accordingly, we hold appellant has not demonstrated that he received
ineffective assistance from his first appellate counsel. Appellant's sixth
point of error is overruled. 

 Similarly, there is no evidence in the record before us that
appellant received ineffective assistance from his present appellate
counsel. Counsel informed appellant that a "review of the trial
proceedings reveals no error which would require a new trial." This
court has similarly found no viable appellate issues among appellant's
claims. Therefore, we cannot say that appellant received ineffective
assistance from his present appellate counsel. Appellant's seventh
issue is overruled.

 The judgment of the trial court is affirmed.


 FEDERICO G. HINOJOSA

 Justice


Do not publish. Tex. R. App. P. 47.3.


Opinion delivered and filed this the

31st day of August, 2000.


1. Both victims recovered fully, and testified against appellant at trial.
2. Appellant could not receive a sentence of community supervision from the trial
judge "where it is shown that a deadly weapon . . . was used or exhibited during the
commission of a felony. . . . On an affirmative finding under this subdivision, the trial
court shall enter the finding in the judgment of the court. On an affirmative finding
that the deadly weapon was a firearm, the court shall enter that finding in its
judgment." Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (Vernon Supp. 2000).
3. We note that appellant was also ineligible to receive a sentence of community
supervision from a jury because he had a prior felony conviction for burglary of a
habitation. See Tex. Code Crim. Proc Ann. art. 42.12, §4(e) (Vernon Supp. 2000).
4. Ms. Mettlach is not identified in the record.
5. Appellant filed a pro se notice of appeal on September 9, 1999,