**Ex parte Jackie Lynn WILSON.**

**No. 69459.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 24, 1986.

Gary L. Waite, Carol Hammond, Paris, for appellant.

Robert Huttash, State's Atty. and Alfred Walker, First Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S MOTION FOR REHEARING

ONION, Presiding Judge.

In his post-conviction application for writ of habeas corpus applicant alleged he was convicted of aggravated robbery upon his tion during the trial that the State would connect the burglar tools found in the petitioner's automobile to other criminal acts similar to the offense for which he was being tried, denied the petitioner a fair and impartial trial. Second, whether the trial court's admission of extraneous offenses into evidence, without first requiring the State to prove a factual basis tending to connect the petitioner to the extraneous offenses, denied the petitioner a fair and impartial trial. Third, whether the State's introduction into evidence of extraneous offenses for which petitioner was never arrested or charged or which resulted in an acquittal, denied the petitioner a fair and impartial trial.

guilty plea in Cause No. 5948 in the 8th District Court and was assessed 20 years' imprisonment as a result of a plea bargain.

He contended his plea of guilty was not freely, intelligently and voluntarily entered because his retained attorney prior to the guilty plea gave him erroneous advice about his expected parole eligibility date. Applicant alleged that his attorney told him the prosecutor would recommend an affirmative finding not be made as to the use or exhibition of a deadly weapon in the commission of the offense. He alleged his attorney informed him that without such affirmative finding applicant's initial eligibility for parole on the 20–year-sentence would be 36 to 60 months with "good time credit." Applicant alleged he later learned that in fact he must serve 80 months before he becomes eligible for parole and without consideration of "good time credit."

In his habeas application he cited Article 42.12, § 15(b), V.A.C.C.P., in effect at the time of his plea [1] and pointed out the conviction for aggravated robbery without any affirmative finding as to a deadly weapon would still require that he not be eligible for release on parole until his actual calendar time served equals ⅓ of the maximum sentence or 20 calendar years, whichever is less.

Appellant cites and relies upon *Ex parte Young,* 644 S.W.2d 3 (Tex.Cr.App.1983), for the proposition that if a defendant is grossly misled and misinformed about his parole eligibility date by his attorney and the defendant relies upon that misinformation to the extent that he is induced to plead guilty or nolo contendere his plea may be rendered involuntary.

The District Clerk forwarded the habeas record to this Court after the convicting court took no action thereon.

This Court remanded the cause for an evidentiary hearing in the trial court or to "resolve this matter through use of affida-

vits." The record was returned with two affidavits, one from applicant and one from his trial counsel, with no findings of facts or conclusions as requested.

The applicant's affidavit tracked the allegations in his habeas application. His affidavit stated:

"I relied on the advice my attorney gave me regarding my parole eligibility date. I would not have plead guilty to a twenty-year sentence if I had known I would have to serve a full one-third of my sentence before I could even become eligible for parole."

His counsel's affidavit stated counsel had no knowledge of any conversation with applicant about parole, that as a rule he did not tell clients definitely "how long they will have to spend," but on occasion had given "them an idea as to how much time they will have to spend." He was aware of the provisions of Article 42.12, § 15(b), V.A.C.C.P., and had never advised "that a violation involving a deadly weapon" would be otherwise discharged except in accordance with said statute. He further stated he had "absolutely no knowledge" what, if anything, he told applicant in May of 1981. Counsel's affidavit revealed that applicant had informed him that at the time of the robbery he (applicant) had a knife, and not a shotgun as alleged in the indictment, but that his co-defendant had a shotgun; he explained the law of parties to the applicant.

Based upon the record then existing, this Court in its original opinion, 706 S.W.2d 649, granted relief setting aside the judgment of conviction finding the case "striking similar to *Ex parte Pruitt,* 689 S.W.2d 905 (Tex.Cr.App.1985), an aggravated robbery case, where as a part of the plea bargain itself it was agreed by the defendant, his counsel and the district attorney that his "good time" would be taken into consideration in determining parole eligibility, and further that there would be no

---

1. Now see Article 42.18, § 8(b), V.A.C.C.P. (Acts 1985, 69th Leg., p. 2943, ch. 427, eff. Sept. 1, 1985), containing substantially the same provisions.

affirmative finding as to a deadly weapon to avoid the flat time requirement of Article 42.12, § 15(a), supra. There this Court found the agreement as to avoidance of serving one-third calendar time before parole eligibility was an element of the plea bargain itself.

The State in its motion for leave to file motion for rehearing argued that a convicted felon was now eligible for post-conviction habeas corpus relief if (1) he swears that his plea of guilty was based on incorrect advice from his attorney, and (2) if the attorney is unable to remember whether he gave the alleged advice. The State argued that this was sufficient to render a plea of guilty involuntary, then a judgment of conviction could be overturned on the uncorroborated affidavit of the convicted defendant alone.

The State's motion was granted, and an evidentiary hearing before the trial court was ordered with instructions for findings of fact and conclusions of law.

At such evidentiary hearing applicant testified he was in court on May 4, 1981, and asked his retained counsel "what was going to take place"; that his counsel went into another room and upon return stated "they" were going to offer applicant 20 years in the Department of Corrections. Applicant asked counsel what would happen if he did not plead guilty for the 20 years, and counsel replied that applicant "could get fifty or ninety-nine by taking it to trial." Applicant then inquired when he "would be home" if he took the 20–year-sentence, and counsel replied "within three to five years." When asked if his counsel told him anything about an affirmative finding of a deadly weapon, he replied, " ... the only thing he told me was we'd get a twenty-year-sentence and I'd be home within three to five years." After talking to his boss and his wife, applicant decided

to take the offer because it "sounded a lot better than taking a chance of getting fifty to ninety-nine." It was after he got to prison that he learned he would not be up for parole until December 1987.

On cross-examination he related the erroneous information about the parole date was based on his counsel's statement about "three to five years," and not because counsel had promised him or told him "anything at all about aggravated sentences or weapons?" Applicant admitted he had not talked to the district attorney or his assistant and had not seen his counsel talking to them, and the only thing he knew he was to get a 20–year-sentence and that counsel, in response to his own question had answered "three to five years" sometime after he came "out of the room with the District Attorney...."

Applicant admitted that at the time of his guilty plea he told the court he was pleading guilty because he was guilty,[2] and that he was pleading guilty of his own free will and accord, that he had not been promised anything, or coerced, etc., and he was not pleading guilty because of "any delusive, persuasive or false hope of pardon or parole prompting him to confess his guilt." Applicant acknowledged the court advised him of the range of punishment, informed him that the court was not bound by any agreement or recommendation of any of the attorneys. He recalled that the prosecutor recommended the 20–year-sentence only, and that the court had inquired of him as well as of his counsel that if that was their understanding of the plea bargain and they both had answered in the affirmative.

The District Attorney at the time and now Congressman, Jim Chapman, testified he was present in court on May 4, 1981, and stated there was a plea bargain agreement for 20 years in applicant's case. He could not recall the conversation with appli-

---

**2.** Applicant admitted at the evidentiary hearing that he entered the store in question at the time of the robbery with a knife, and in company with a co-defendant Moman, who carried a

shotgun. Another co-defendant stayed with the car as a lookout. Moman was shown to have received a 20–year–sentence and the other co-defendant received a 12–year–sentence.

cant's counsel, and did not have any recollection about any agreement to eliminate any finding as to a deadly weapon in the judgment. He had served on a committee which recommended to the Legislature the enactment of the law pertaining to the affirmative finding in the judgment of a deadly weapon, he believed it was "a good law" and could not recall ever having agreed not to utilize the statute. Chapman testified he was aware that either a conviction for aggravated robbery or an affirmative finding of a deadly weapon would have an effect on the parole as intended by the statute, and there was no agreement between him and the defense counsel except as to the 20 years. Chapman stated he did not authorize the defense counsel to convey to the applicant any speculation of his as when applicant would be out of prison, and that it was not his policy to instruct a defense attorney what to tell his client.

John D. Byers testified he was applicant's retained trial counsel. As a result of things that had happened in Franklin County he had decided "it would not be a good thing to try the case", and that he sought the best offer he could get from the State; that after several discussions with the prosecutor "I finally got him down to twenty years." He did not recall anything being said during negotiations about parole eligibility. Counsel did not remember talking to applicant about parole eligibility. He acknowledged he sometimes discussed with clients a rule of thumb about how long they would serve, and it was possible he had discussed the matter with applicant, was possible that they discussed that applicant would be out in three to five years, but he did not recall any such discussion.

After the conclusion of the evidentiary hearing, the trial court made certain findings of fact and conclusions of law. The Court found there was no agreement between the State and the applicant or his attorney to delete any affirmative finding as to a deadly weapon from the judge, and no agreement as to the actual time to be

served by applicant in prison; that applicant was properly admonished as to the consequences of his plea and that plea was freely and voluntarily entered.

 There, of course, is the presumption of the regularity of the judgment of conviction and the proceedings absent a showing to the contrary. *Thompson v. State*, 641 S.W.2d 920, 921 (Tex.Cr.App. 1982); *Schneider v. State*, 594 S.W.2d 415, 418 (Tex.Cr.App.1980); *McCloud v. State*, 527 S.W.2d 885, 887 (Tex.Cr.App.1975); *Green v. State*, 510 S.W.2d 919, 921 (Tex. Cr.App.1974). And the burden is on the defendant to overcome the presumption. *Tennison v. State*, 168 Tex.Cr.R. 354, 327 S.W.2d 575, 576 (1959).

 It is equally well established in post-conviction habeas corpus proceedings the burden of proof is upon the applicant, and includes the burden of proving his factual allegations. See *Ex parte McWilliams*, 634 S.W.2d 815 (Tex.Cr.App.1982), cert. den. 459 U.S. 1036; *Ex parte Salinas*, 660 S.W.2d 97 (Tex.Cr.App.1983); *Alexander v. State*, 598 S.W.2d 308 (Tex.Cr.App.1980); *Ex parte Sanders*, 588 S.W.2d 383 (Tex.Cr. App.1979). Further, in such proceedings there is a presumption of regularity with respect to guilty pleas under Article 1.15, V.A.C.C.P., and its forerunners. *Reed v. State*, 610 S.W.2d 495 (Tex.Cr.App.1981).

The judgment in Cause No. 5948 entered on May 4, 1981 states in part:

"Whereupon, the Defendant ... properly represented by counsel, pleaded guilty to the charge contained in the Indictment filed herein; thereupon the Court admonished the defendant of the consequences of said plea of guilty but the Defendant persisted in pleading guilty; and the Defendant plainly appearing to the Court to be sane, *and uninfluenced in making said plea* by any consideration of fear or *by any persuasion, or delusive hope of pardon prompting the Defendant to confess his guilty,* the said plea of guilty is by the

Court received and here now entered of record upon the minutes of the Court as the plea of the Defendant herein...." (Emphasis supplied.)

Only applicant's sworn testimony established that his counsel had told him "in three to five years" in response to his question as to when he "would be home." There was no showing of any express reference to "good time credit" as such. Appellant's counsel could not recall any discussion with applicant about parole eligibility, but admitted it was a possibility. It was undisputed that the time applicant would have to serve on a 20–year-sentence was not discussed as part of the plea bargain negotiations. Applicant admitted he only assumed it was so because counsel answered his question after returning from the discussion with the prosecutor. In his testimony, inconsistent with his affidavit and allegations, applicant stated there was no discussion or promises about deletion of an affirmative finding of the use of a deadly weapon. This is supported by other evidence in the record showing that such proposed deletion was not discussed and was not a part of the plea bargain. After applicant was duly admonished in accordance with Article 26.13, V.A.C.C.P., and after the prosecutor recommended 20 years as punishment as the plea bargain in the case, without more the court inquired of the applicant and his counsel individually if that was their understanding of the plea bargain and received affirmative answers.

*Ex parte Evans*, 690 S.W.2d 274 (Tex.Cr. App.1985), involved a proceeding under Article 11.07, V.A.C.C.P. There it was held the speculative nature of parole attainment was such as to discount its importance on the question of voluntariness of a defendant's guilty plea to the extent that the erroneous advice of defense counsel on the subject of parole eligibility did not render defendant's guilty plea involuntary, overruling *Young*, supra, to the extent of the conflict. Evans had pled guilty to aggravated robbery and the court assessed 10 years as punishment as part of the plea bargain. Evans claimed his attorney told him he would be eligible for parole after serving ⅓ of his sentence, and he could accumulate good time credit on his sentence and he could accumulate his ⅓ time in 18 or 20 months. All of this was not true under Article 42.12, § 15(b), supra.

*Ex parte Pruitt*, 689 S.W.2d 905 (Tex.Cr. App.1985), involved an Article 11.07, V.A.C C.P., proceeding where it was found a plea bargain was broken where terms thereof were impossible to fulfill. Pruitt pleaded guilty to aggravated robbery and his punishment was assessed at 25 years' imprisonment.

Specifically Pruitt alleged an involuntary guilty plea because of a broken plea bargain in that he, his attorney and the district attorney agreed that his "good time" served would be taken into account when his parole eligibility was considered, and that there would be no affirmative finding as to a deadly weapon to avoid the flat time requirement of Article 42.12, § 15(b). *"The agreement between the parties* concerning the avoidance of serving one-third calendar time before eligibility for parole, as evidenced from the record, elevates this agreement to the status of an element of the plea bargain." *Pruitt*, at 906. (Emphasis added.)

*Evans, Pruitt* and the instant case all involved guilty pleas to the offense of aggravated robbery. In *Evans* there was a plea bargain for 10 years, apparently nothing more. Later the defendant claimed his attorney gave him erroneous advice on parole eligibility which induced his guilty plea. No relief was granted. In *Pruitt* the plea bargain was shown to include not only a term of years recommendation, but an agreement between Pruitt, his attorney and the district attorney that there would be no affirmative finding as to the use of a deadly weapon, and still further an agreement that Pruitt's good time credit would be considered in determining his initial parole eligibility. And in the habeas proceed-

ing the trial court found this to be the agreement of the parties and granted relief.

 The applicant has failed to sustain his burden of proof. As in *Ex parte Evans,* supra, we hold, based on the record before us, that if indeed applicant's counsel gave erroneous advice concerning applicant's parole eligibility it clearly was not an element of the plea bargain entered into by the parties. The applicant's guilty plea was not rendered involuntary. See *Ex parte Hughling,* 706 S.W.2d 662 (Tex.Cr. App.1986).

The judgment granting relief is set aside, and the relief prayed for is denied.

It is so ordered.

CLINTON and TEAGUE, JJ., dissent.