TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00204-CR






Cody Harrison Ball, Appellant


v.


The State of Texas, Appellee






FROM COUNTY COURT AT LAW NO. 3 OF WILLIAMSON COUNTY

NO. 06-7728-3, HONORABLE DONALD HIGGINBOTHAM, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 In February 2008, appellant Cody Harrison Ball pleaded no contest to the
misdemeanor offense of driving while intoxicated. Punishment was assessed at 180 days in
county jail and a fine of $2,000, but the trial court suspended imposition of the sentence and
placed Ball on community supervision for a period of eighteen months. Subsequently, the State filed
an amended motion to revoke probation, alleging that Ball had violated the conditions of his
community supervision. Among the State's allegations was that Ball had failed on multiple
occasions to provide a breath sample as directed by the Williamson County Probation Department.
Following a hearing, the trial court revoked Ball's community supervision and sentenced him to
150 days in county jail and a $500.00 fine. In two points of error on appeal, Ball asserts that he was
not provided sufficient notice of the allegations in the amended motion to revoke and that the
evidence presented at the revocation hearing is insufficient to prove that he violated a condition of
his community supervision. We will affirm.

BACKGROUND

 The State filed its first motion to revoke probation on September 15, 2008. In the
motion, the State alleged that Ball had violated the conditions of his community supervision
by consuming an alcoholic beverage on two occasions and failing to pay certain fees. The State and
Ball later entered into a so-called "plea bargain" in which the State agreed to move to dismiss its
motion to revoke in exchange for Ball agreeing to serve six days in county jail and to "have installed
in [his] residence an at-home alcohol detection device (VICAP)." As part of this agreement, Ball
was required to "have access to a land line telephone, answer all calls placed by the service provider,
and provide a sample of [his] breath when called upon to do so." The State withdrew its motion to
revoke and filed a motion to amend Ball's community supervision to include these additional
conditions. The trial court then entered an order continuing Ball's community supervision in
accordance with the terms of the agreement.

 On March 30, 2009, the trial court signed a second order amending the conditions of
Ball's community supervision, again "in lieu of [the State] filing a Motion to Revoke Probation."
This time, Ball's term of community supervision was extended by an additional six months, he was
required to perform an additional 24 hours of community service restitution, and he was ordered to
serve an additional three days in county jail.

 On June 8, 2009, the State filed another motion to revoke Ball's probation. In this
motion, the State alleged that Ball had violated the conditions of his community supervision by
failing to provide an at-home breath sample as directed on 20 separate occasions between April 3
and May 22, 2009. No other violations of community supervision were alleged.

 On February 3, 2010, the State filed an amended motion to revoke probation. In the
amended motion, the State alleged that Ball had failed to provide a breath sample on 108 separate
occasions between April 6, 2009 and January 31, 2010. (1) The State further alleged in the amended
motion that Ball had failed to report to his community supervision officer as directed on a certain
date, "failed to complete all programs, courses, community service restitution and additional
conditions of supervision ninety (90) days prior to termination of community supervision," and
"failed to attend [an] Aftercare Program as directed."

 At the revocation hearing held on March 22, 2010, three witnesses testified
for the State: Amber Norton, one of Ball's probation officers; Amy Valentine, an employee of the
company that administers the VICAP program; and Angie Lezack, the probation officer who had
supervised Ball's participation in the VICAP program. Ball testified in his defense. Also admitted
into evidence were documents detailing Ball's participation in the VICAP program, including
summaries of the results of the calls that were placed to his residence and reports of the alleged
violations. At the conclusion of the hearing, the trial court found all of the State's alleged violations
to be true, revoked Ball's community supervision, and sentenced him to jail as noted above. This
appeal followed.


ANALYSIS

Notice

 In his first point of error, Ball asserts that he did not have sufficient notice of
the allegations in the State's amended motion to revoke probation. According to Ball, he was not
aware of the amended motion until the day of the revocation hearing. Therefore, in Ball's view, the
trial court "erred in considering the amended motion, in admitting evidence regarding its allegations,
and in finding that Appellant violated his community supervision based upon those allegations."

 Because a revocation of community supervision results in the loss of liberty,
certain due process protections must be afforded to the probationer prior to revocation. See Gagnon
v. Scarpelli, 411 U.S. 778, 782 (1973); Bradley v. State, 564 S.W.2d 727, 730 (Tex. Crim.
App. 1978); Atchison v. State, 124 S.W.3d 755, 760 (Tex. App.--Austin 2003, pet. ref'd) (supp. op.
on reh'g). Due process requires that a written motion to revoke fully inform a probationer of
the violations of community supervision that he is alleged to have breached. See Garner v. State,
545 S.W.2d 178, 179 (Tex. Crim. App. 1977). However, a motion to revoke does not require the
same particularity as an indictment to afford a defendant due process. Labelle v. State, 720 S.W.2d
101, 104 (Tex. Crim. App. 1986). Rather, the allegations in the motion to revoke must fully set forth
the alleged violations of community supervision so that the defendant might be informed of what
he will be called to defend. Garner, 545 S.W.2d at 179. The trial court may only revoke community
supervision based on the allegations of which the probationer has due notice, those which are
contained in the written motion to revoke filed during the term of the probationary period. Caddell
v. State, 605 S.W.2d 275, 277 (Tex. Crim. App. 1980).

 The notice requirements are not as strict for revocation hearings as they are for
other criminal proceedings. See Labelle, 720 S.W.2d at 104; Robinson v. State, 686 S.W.2d 326,
328 (Tex. App.--Houston [14th Dist.] 1985, no pet.). There is no statutory requirement as to the
length of time a probationer must have a copy of the revocation motion served upon him prior to
the revocation hearing so long as the probationary period has not expired. See Trevino v. State,
464 S.W.2d 859, 861 (Tex. Crim. App. 1971); McDaniel v. State, 254 S.W.2d 785 (1953).
Nevertheless, the court of criminal appeals has observed that, consistent with notice and timing
requirements in other contexts, it is "good practice" for the trial court to require the State to serve
a copy of the revocation motion upon the probationer at least 10 full days before the hearing
"unless the same is personally waived by the probationer and his counsel." See Campbell v. State,
456 S.W.2d 918, 920 n.3 (Tex. Crim. App. 1970); McDaniel, 254 S.W.2d at 785; cf. Tex. Code
Crim. Proc. Ann. art. 28.10(a) (West 2006) ("On the request of the defendant, the court shall allow
the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to
the amended indictment or information.").

 At the revocation hearing held on March 22, 2010, the prosecutor stated that
the amended motion to revoke had "been on file for more than 10 days with the Court." The
record supports this statement, as the amended motion bears the county clerk's file stamp dated
February 3, 2010, at 3:00 p.m., and there is nothing in the record to overcome the presumption
that the amended motion was properly filed. See Light v. State, 15 S.W.3d 104, 107 (Tex. Crim.
App. 2000) (presumption of regularity "requires a reviewing court, absent evidence of impropriety,
to indulge every presumption in favor of the regularity of the proceedings and documents in the
lower court"); Ex parte Wilson, 716 S.W.2d 953, 956 (Tex. Crim. App. 1986) (burden is on
defendant to overcome presumption of regularity). Thus, the amended motion to revoke was on file
for over six weeks prior to the revocation hearing. If counsel had reviewed the court's file at any
point during that six-week period, he likely would have been made aware of the amended motion. (2) 

 Nevertheless, the fact that the amended motion was on file with the court does
not necessarily mean that the amended motion was properly served on Ball prior to the hearing. We
observe that the record does not contain a certificate of service or a sheriff's return attached to the
amended motion, as did the original motion to revoke. (3) However, even if we were to find that Ball
was not served with a copy of the amended motion to revoke, he would not be entitled to reversal
unless, in the context of the case, the record reveals that he was harmed by the lack of notice. See
Labelle, 720 S.W.2d at 107-09.

 Here, all but three of the additional allegations in the amended motion to revoke
concerned the same type of violation that was alleged in the original motion to revoke, namely
that Ball had failed on various dates to provide a breath sample as directed. Thus, for the most part,
the amended motion simply alleged additional violations of the same condition of community
supervision that was alleged to have been violated in the original motion to revoke. Ball has not
shown how his defense to those additional violations would have been any different than his defense
to the original violations of which he did have notice. As for the three administrative violations that
were not related to the failure to provide a breath sample, Ball was able to effectively cross-examine
the State's witnesses on those allegations and present testimonial evidence as to why his non-compliance with those conditions should be excused. Finally, the apparent lack of notice regarding
the allegations in the amended motion to revoke does not apply to the allegations in the original
motion to revoke. Thus, Ball's ability to prepare a defense to those allegations was not impacted
and, as we explain below, the evidence supporting those allegations was sufficient to support the
trial court's decision to revoke Ball's community supervision.

 We overrule Ball's first point of error. 


Sufficiency of the evidence

 In his second point of error, Ball asserts that "the greater weight of credible evidence
does not create a reasonable belief that appellant violated a condition of his community supervision."
We construe this point as a challenge to the sufficiency of the evidence supporting the trial court's
decision to revoke Ball's community supervision.

 We review a trial court's decision to revoke community supervision for abuse of
discretion. Rickels v. State, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). A trial court abuses its
discretion in revoking community supervision when the State fails to meet its burden of proof.
Cardona v. State, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). The State's burden of proof in
community supervision revocation cases is by a preponderance of the evidence. Rickels, 202 S.W.3d
at 763-64. Thus, the trial court does not abuse its discretion in revoking community supervision
if the greater weight of the credible evidence creates a reasonable belief that the defendant has
violated a condition of his community supervision. See id. at 764. Additionally, proof of any one
of the alleged violations is sufficient to support the revocation order. Moses v. State, 590 S.W.2d
469, 470 (Tex. Crim. App. 1979); Atchison, 124 S.W.3d at 758. We view the evidence presented
in a revocation proceeding in the light most favorable to the trial court's ruling. Garrett v. State,
619 S.W.2d 172, 174 (Tex. Crim. App. 1981); Mauney v. State, 107 S.W.3d 693, 695
(Tex. App.--Austin 2003, no pet.). As the trier of fact, it is left to the trial court to judge the
credibility of witnesses and the weight to be given their testimony. Garrett, 619 S.W.2d at 174;
Mauney, 107 S.W.3d at 695. 

 One of the conditions of Ball's community supervision was that he have installed in
his residence an at-home alcohol detection device known as a VICAP. As part of this condition, Ball
was required to "have access to a land line telephone, answer all calls placed by the service provider,
and provide a sample of [his] breath when called upon to do so." The State alleged that Ball had
failed to comply with this condition on multiple occasions. (4)

 One of Ball's probation officers, Amber Norton, testified that a VICAP is a camera
device which detects alcohol and which the probationer blows into twice a day, "once in the morning
and once in the evening." Norton explained that the probationer has "an hour time frame [during
which] they can receive phone calls" from VICAP representatives. "They will call in that hour time
frame two to three times for them to blow into the device." Norton testified that the probationer is
allowed to pick the times at which the calls are made and that Ball chose 8:00 a.m. and 10:30 p.m.
Norton added that those times represented the middle point during which the calls could be received.
In other words, in the morning, the calls could come in at any time between 7:30 a.m. and 8:30 a.m.,
while at night, the calls could come in at any time between 10:00 p.m. and 11:00 p.m. Norton
testified that Ball had missed these calls on "several" occasions beginning on April 6, 2009.

 When asked if Ball had offered any explanation "about why he couldn't comply with
those terms," Norton recalled, "He's had reasons of teeth problems, and that he's on medications.
He also has a daughter that sleeps in the same room [in which the device is located]. Those are
mostly the reasons." Norton added that Ball had complained "that maybe the phone calls were out
of the time range, or that they wouldn't call as many times as they were supposed to."

 When asked to characterize Ball's participation and cooperation with regard to his
conditions of community supervision, Norton testified, "He's been compliant with his other
conditions and his payments, but when it comes to the . . . VICAP, he constantly has complaints and
shifts blame." Norton agreed that the purpose of VICAP is to let the State know if Ball has been
drinking and that when Ball does not provide a sample as directed, the State "has no idea" whether
Ball has been drinking.

 On cross-examination, Norton acknowledged that Ball had provided over 800 at-home breath samples in compliance with the VICAP requirement and that none of the samples he
had provided tested positive for alcohol. Norton also acknowledged that there may have been times
when the calls came in "out of his time frame," but she added that in those cases, "it's not considered
a violation" and that "it's not held against him."

 Amy Valentine, a VICAP employee, testified that VICAP stands for "video capture"
and that "it's actually a live streaming video from a camera at the participant's residence
to the monitoring system." Valentine explained that "VICAP is an actual live telephone call from
an operator to a participant. . . . The call is initiated from a live operator, and the equipment is not
turned on until the monitoring center instructs the person to turn it on." When asked if there had
been any "problems with people not receiving their phone calls" or "problems with this system,"
Valentine testified, "Not that I'm aware of." She added, "Usually, when we are not successful with
administering a test, it's because of environmental factors with the phone line at the participant's
residence. It doesn't appear that that is the case with this participant."

 Valentine also testified about the company's policies regarding multiple calls made to
the participant. According to Valentine, the number of calls placed "depends on whether
the [first] call is successful or not. If we receive a line busy or no answer, we do try it one more
time within 15 minutes. So, if the participant passes both tests, there will only be two calls. If
we are unsuccessful in reaching them, there could be three, or possibly even a maximum of
four in one day."

 During Valentine's testimony, documents summarizing Ball's VICAP violations
were admitted into evidence. The documents show multiple calls made to Ball's residence and
not answered (and thus no breath samples submitted) on several mornings and nights in April
and May 2009.

 Angie Lezack, the probation officer who supervised Ball's participation in the VICAP
program, testified that she had discussed with Ball his responsibilities regarding the program before
he started it, including the two report times per day that he would have to provide a breath specimen.
Lezack recalled that Ball had agreed to the 8:00 a.m. and 10:30 p.m. time periods for the calls and
that those times had never changed. Lezack also testified that she has supervised other probationers
in the program and that Ball's level of noncompliance was not typical. In Lezack's opinion, the
VICAP program is effective and a good tool to prevent people from drinking alcohol. In Ball's
case, however, Lezack had "no clue" if Ball had stopped drinking. She explained, "I advised
the defendant that if he misses a call, it's an automatic alcohol violation. I mean, that's what--we
automatically assume it's an alcohol violation when he misses a call. So, he's aware that that's the
case. I've told him that before."

 Ball testified that he remembered discussing VICAP with his probation officers, but
he disputed the State's contention that he was able to choose the times in which to receive the calls.
Ball acknowledged missing some of the calls, but he blamed most of the missed calls on
the prescription medications that he was taking for a ruptured disk in his back and a "chronic
panic disorder." The medications, Ball explained, caused drowsiness, sleepiness, and "slow"
hearing. Ball also claimed that on some occasions he would receive a call and hear nothing other
than a "fax noise" and that some of the calls came in "before and after the cut off times." 
Information regarding Ball's medication was admitted into evidence, as was a letter Ball had written
to Lezack complaining about the VICAP program.

 Viewing the above evidence in the light most favorable to the trial court's ruling, we
conclude that the State satisfied its burden to prove by a preponderance of the evidence that Ball
failed to provide a breath sample as directed. Two of Ball's probation officers testified that Ball
had failed to comply with the VICAP requirement. Their testimony was supported by documentation
tending to show that on multiple occasions, Ball had not answered the phone as he was required
to do. While these documents show that some missed calls were made outside the time periods
during which Ball was required to answer, others show that many of the missed calls were made
during the agreed upon times.

 On appeal, Ball repeats many of the same arguments that he made during the
revocation hearing, namely that there were technical problems with the VICAP device, that he had
legitimate reasons for missing the calls on certain occasions, and that the "vague" requirements of
the program were not sufficiently explained to him. However, the trial court would not have abused
its discretion in crediting the testimony of Ball's probation officers that they had explained the
details of the program to Ball and the consequences of him missing a call, in not crediting Ball's
testimony attempting to excuse his noncompliance, and in crediting Valentine's testimony about the
reliability of the VICAP device.

 Having found that the State satisfied its burden of proof, we cannot conclude that
the trial court abused its discretion in revoking Ball's community supervision. We overrule Ball's
second point of error.


CONCLUSION

 We affirm the judgment of the trial court.



 __________________________________________

 Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: June 1, 2011

Do Not Publish

1. Of those 108 alleged violations, 17 had also been alleged in the State's previous motion
to revoke.
2. Counsel for Ball acknowledged during the revocation hearing that when he was in court
on January 21 for the announcement docket, he "did hear mention that there was an intent to amend
the motion to revoke probation." Counsel also stated that he had "[gone] through the entire court's
file last time we were in court on February 21." However, the court's docket sheet reflects that the
previous court proceeding in this case was the one held on January 21. 
3. We note that the court of criminal appeals, when faced with a similar record, wrote, "The
problem here is simply that one cannot find in the record any paper showing that appellant received
or was served with the motion to revoke probation. To be technical about it, a failure of that kind
of showing in an appellate record is not a denial of due process. It is no more than a negative
suggestion that the motion was not served or received." Younger v. State, 685 S.W.2d 657, 658
(Tex. Crim. App. 1985).
4. Because of the complaint raised concerning insufficient notice of the allegations in the
amended motion to revoke, we shall limit our review to the 17 alleged occasions that were presented
in both the original and amended motions to revoke. Ball does not dispute that he had notice of
these allegations.