# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00204-CR

**Cody Harrison Ball, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM COUNTY COURT AT LAW NO. 3 OF WILLIAMSON COUNTY
### NO. 06-7728-3, HONORABLE DONALD HIGGINBOTHAM, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

In February 2008, appellant Cody Harrison Ball pleaded no contest to the misdemeanor offense of driving while intoxicated. Punishment was assessed at 180 days in county jail and a fine of $2,000, but the trial court suspended imposition of the sentence and placed Ball on community supervision for a period of eighteen months. Subsequently, the State filed an amended motion to revoke probation, alleging that Ball had violated the conditions of his community supervision. Among the State's allegations was that Ball had failed on multiple occasions to provide a breath sample as directed by the Williamson County Probation Department. Following a hearing, the trial court revoked Ball's community supervision and sentenced him to 150 days in county jail and a $500.00 fine. In two points of error on appeal, Ball asserts that he was not provided sufficient notice of the allegations in the amended motion to revoke and that the evidence presented at the revocation hearing is insufficient to prove that he violated a condition of his community supervision. We will affirm.

**BACKGROUND**

The State filed its first motion to revoke probation on September 15, 2008. In the motion, the State alleged that Ball had violated the conditions of his community supervision by consuming an alcoholic beverage on two occasions and failing to pay certain fees. The State and Ball later entered into a so-called "plea bargain" in which the State agreed to move to dismiss its motion to revoke in exchange for Ball agreeing to serve six days in county jail and to "have installed in [his] residence an at-home alcohol detection device (VICAP)." As part of this agreement, Ball was required to "have access to a land line telephone, answer all calls placed by the service provider, and provide a sample of [his] breath when called upon to do so." The State withdrew its motion to revoke and filed a motion to amend Ball's community supervision to include these additional conditions. The trial court then entered an order continuing Ball's community supervision in accordance with the terms of the agreement.

On March 30, 2009, the trial court signed a second order amending the conditions of Ball's community supervision, again "in lieu of [the State] filing a Motion to Revoke Probation." This time, Ball's term of community supervision was extended by an additional six months, he was required to perform an additional 24 hours of community service restitution, and he was ordered to serve an additional three days in county jail.

On June 8, 2009, the State filed another motion to revoke Ball's probation. In this motion, the State alleged that Ball had violated the conditions of his community supervision by failing to provide an at-home breath sample as directed on 20 separate occasions between April 3 and May 22, 2009. No other violations of community supervision were alleged.

On February 3, 2010, the State filed an amended motion to revoke probation. In the amended motion, the State alleged that Ball had failed to provide a breath sample on 108 separate occasions between April 6, 2009 and January 31, 2010.[1] The State further alleged in the amended motion that Ball had failed to report to his community supervision officer as directed on a certain date, "failed to complete all programs, courses, community service restitution and additional conditions of supervision ninety (90) days prior to termination of community supervision," and "failed to attend [an] Aftercare Program as directed."

At the revocation hearing held on March 22, 2010, three witnesses testified for the State: Amber Norton, one of Ball's probation officers; Amy Valentine, an employee of the company that administers the VICAP program; and Angie Lezack, the probation officer who had supervised Ball's participation in the VICAP program. Ball testified in his defense. Also admitted into evidence were documents detailing Ball's participation in the VICAP program, including summaries of the results of the calls that were placed to his residence and reports of the alleged violations. At the conclusion of the hearing, the trial court found all of the State's alleged violations to be true, revoked Ball's community supervision, and sentenced him to jail as noted above. This appeal followed.

## ANALYSIS

**Notice**

In his first point of error, Ball asserts that he did not have sufficient notice of the allegations in the State's amended motion to revoke probation. According to Ball, he was not

---

[1] Of those 108 alleged violations, 17 had also been alleged in the State's previous motion to revoke.

aware of the amended motion until the day of the revocation hearing. Therefore, in Ball's view, the trial court "erred in considering the amended motion, in admitting evidence regarding its allegations, and in finding that Appellant violated his community supervision based upon those allegations."

Because a revocation of community supervision results in the loss of liberty, certain due process protections must be afforded to the probationer prior to revocation. *See Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *Bradley v. State*, 564 S.W.2d 727, 730 (Tex. Crim. App. 1978); *Atchison v. State*, 124 S.W.3d 755, 760 (Tex. App.—Austin 2003, pet. ref'd) (supp. op. on reh'g). Due process requires that a written motion to revoke fully inform a probationer of the violations of community supervision that he is alleged to have breached. *See Garner v. State*, 545 S.W.2d 178, 179 (Tex. Crim. App. 1977). However, a motion to revoke does not require the same particularity as an indictment to afford a defendant due process. *Labelle v. State*, 720 S.W.2d 101, 104 (Tex. Crim. App. 1986). Rather, the allegations in the motion to revoke must fully set forth the alleged violations of community supervision so that the defendant might be informed of what he will be called to defend. *Garner*, 545 S.W.2d at 179. The trial court may only revoke community supervision based on the allegations of which the probationer has due notice, those which are contained in the written motion to revoke filed during the term of the probationary period. *Caddell v. State*, 605 S.W.2d 275, 277 (Tex. Crim. App. 1980).

The notice requirements are not as strict for revocation hearings as they are for other criminal proceedings. *See Labelle*, 720 S.W.2d at 104; *Robinson v. State*, 686 S.W.2d 326, 328 (Tex. App.—Houston [14th Dist.] 1985, no pet.). There is no statutory requirement as to the length of time a probationer must have a copy of the revocation motion served upon him prior to the revocation hearing so long as the probationary period has not expired. *See Trevino v. State*,

4

464 S.W.2d 859, 861 (Tex. Crim. App. 1971); *McDaniel v. State*, 254 S.W.2d 785 (1953). Nevertheless, the court of criminal appeals has observed that, consistent with notice and timing requirements in other contexts, it is "good practice" for the trial court to require the State to serve a copy of the revocation motion upon the probationer at least 10 full days before the hearing "unless the same is personally waived by the probationer and his counsel." *See Campbell v. State*, 456 S.W.2d 918, 920 n.3 (Tex. Crim. App. 1970); *McDaniel*, 254 S.W.2d at 785; *cf.* Tex. Code Crim. Proc. Ann. art. 28.10(a) (West 2006) ("On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.").

At the revocation hearing held on March 22, 2010, the prosecutor stated that the amended motion to revoke had "been on file for more than 10 days with the Court." The record supports this statement, as the amended motion bears the county clerk's file stamp dated February 3, 2010, at 3:00 p.m., and there is nothing in the record to overcome the presumption that the amended motion was properly filed. *See Light v. State*, 15 S.W.3d 104, 107 (Tex. Crim. App. 2000) (presumption of regularity "requires a reviewing court, absent evidence of impropriety, to indulge every presumption in favor of the regularity of the proceedings and documents in the lower court"); *Ex parte Wilson*, 716 S.W.2d 953, 956 (Tex. Crim. App. 1986) (burden is on defendant to overcome presumption of regularity). Thus, the amended motion to revoke was on file for over six weeks prior to the revocation hearing. If counsel had reviewed the court's file at any point during that six-week period, he likely would have been made aware of the amended motion.[2]

---

[2] Counsel for Ball acknowledged during the revocation hearing that when he was in court on January 21 for the announcement docket, he "did hear mention that there was an intent to amend the motion to revoke probation." Counsel also stated that he had "[gone] through the entire court's

Nevertheless, the fact that the amended motion was on file with the court does not necessarily mean that the amended motion was properly served on Ball prior to the hearing. We observe that the record does not contain a certificate of service or a sheriff's return attached to the amended motion, as did the original motion to revoke.[3]  However, even if we were to find that Ball was not served with a copy of the amended motion to revoke, he would not be entitled to reversal unless, in the context of the case, the record reveals that he was harmed by the lack of notice. *See Labelle*, 720 S.W.2d at 107-09.

Here, all but three of the additional allegations in the amended motion to revoke concerned the same type of violation that was alleged in the original motion to revoke, namely that Ball had failed on various dates to provide a breath sample as directed. Thus, for the most part, the amended motion simply alleged additional violations of the same condition of community supervision that was alleged to have been violated in the original motion to revoke. Ball has not shown how his defense to those additional violations would have been any different than his defense to the original violations of which he did have notice. As for the three administrative violations that were not related to the failure to provide a breath sample, Ball was able to effectively cross-examine the State's witnesses on those allegations and present testimonial evidence as to why his non-compliance with those conditions should be excused. Finally, the apparent lack of notice regarding

file last time we were in court on February 21." However, the court's docket sheet reflects that the previous court proceeding in this case was the one held on January 21.

[3]  We note that the court of criminal appeals, when faced with a similar record, wrote, "The problem here is simply that one cannot find in the record any paper showing that appellant received or was served with the motion to revoke probation. To be technical about it, a failure of that kind of showing in an appellate record is not a denial of due process. It is no more than a negative suggestion that the motion was not served or received." *Younger v. State*, 685 S.W.2d 657, 658 (Tex. Crim. App. 1985).

the allegations in the amended motion to revoke does not apply to the allegations in the original motion to revoke. Thus, Ball's ability to prepare a defense to those allegations was not impacted and, as we explain below, the evidence supporting those allegations was sufficient to support the trial court's decision to revoke Ball's community supervision.

We overrule Ball's first point of error.

**Sufficiency of the evidence**

In his second point of error, Ball asserts that "the greater weight of credible evidence does not create a reasonable belief that appellant violated a condition of his community supervision." We construe this point as a challenge to the sufficiency of the evidence supporting the trial court's decision to revoke Ball's community supervision.

We review a trial court's decision to revoke community supervision for abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). A trial court abuses its discretion in revoking community supervision when the State fails to meet its burden of proof. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). The State's burden of proof in community supervision revocation cases is by a preponderance of the evidence. *Rickels*, 202 S.W.3d at 763-64. Thus, the trial court does not abuse its discretion in revoking community supervision if the greater weight of the credible evidence creates a reasonable belief that the defendant has violated a condition of his community supervision. *See id*. at 764. Additionally, proof of any one of the alleged violations is sufficient to support the revocation order. *Moses v. State*, 590 S.W.2d 469, 470 (Tex. Crim. App. 1979); *Atchison*, 124 S.W.3d at 758. We view the evidence presented in a revocation proceeding in the light most favorable to the trial court's ruling. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981); *Mauney v. State*, 107 S.W.3d 693, 695

7

(Tex. App.—Austin 2003, no pet.).  As the trier of fact, it is left to the trial court to judge the credibility of witnesses and the weight to be given their testimony.  *Garrett*, 619 S.W.2d at 174; *Mauney*, 107 S.W.3d at 695.

One of the conditions of Ball's community supervision was that he have installed in his residence an at-home alcohol detection device known as a VICAP.  As part of this condition, Ball was required to "have access to a land line telephone, answer all calls placed by the service provider, and provide a sample of [his] breath when called upon to do so."  The State alleged that Ball had failed to comply with this condition on multiple occasions.[4]

One of Ball's probation officers, Amber Norton, testified that a VICAP is a camera device which detects alcohol and which the probationer blows into twice a day, "once in the morning and once in the evening."  Norton explained that the probationer has "an hour time frame [during which] they can receive phone calls" from VICAP representatives.  "They will call in that hour time frame two to three times for them to blow into the device."  Norton testified that the probationer is allowed to pick the times at which the calls are made and that Ball chose 8:00 a.m. and 10:30 p.m.  Norton added that those times represented the middle point during which the calls could be received.  In other words, in the morning, the calls could come in at any time between 7:30 a.m. and 8:30 a.m., while at night, the calls could come in at any time between 10:00 p.m. and 11:00 p.m.  Norton testified that Ball had missed these calls on "several" occasions beginning on April 6, 2009.

---

[4] Because of the complaint raised concerning insufficient notice of the allegations in the amended motion to revoke, we shall limit our review to the 17 alleged occasions that were presented in both the original and amended motions to revoke.  Ball does not dispute that he had notice of these allegations.

8

When asked if Ball had offered any explanation "about why he couldn't comply with those terms," Norton recalled, "He's had reasons of teeth problems, and that he's on medications. He also has a daughter that sleeps in the same room [in which the device is located]. Those are mostly the reasons." Norton added that Ball had complained "that maybe the phone calls were out of the time range, or that they wouldn't call as many times as they were supposed to."

When asked to characterize Ball's participation and cooperation with regard to his conditions of community supervision, Norton testified, "He's been compliant with his other conditions and his payments, but when it comes to the . . . VICAP, he constantly has complaints and shifts blame." Norton agreed that the purpose of VICAP is to let the State know if Ball has been drinking and that when Ball does not provide a sample as directed, the State "has no idea" whether Ball has been drinking.

On cross-examination, Norton acknowledged that Ball had provided over 800 at-home breath samples in compliance with the VICAP requirement and that none of the samples he had provided tested positive for alcohol. Norton also acknowledged that there may have been times when the calls came in "out of his time frame," but she added that in those cases, "it's not considered a violation" and that "it's not held against him."

Amy Valentine, a VICAP employee, testified that VICAP stands for "video capture" and that "it's actually a live streaming video from a camera at the participant's residence to the monitoring system." Valentine explained that "VICAP is an actual live telephone call from an operator to a participant. . . . The call is initiated from a live operator, and the equipment is not turned on until the monitoring center instructs the person to turn it on." When asked if there had been any "problems with people not receiving their phone calls" or "problems with this system,"

Valentine testified, "Not that I'm aware of." She added, "Usually, when we are not successful with administering a test, it's because of environmental factors with the phone line at the participant's residence. It doesn't appear that that is the case with this participant."

Valentine also testified about the company's policies regarding multiple calls made to the participant. According to Valentine, the number of calls placed "depends on whether the [first] call is successful or not. If we receive a line busy or no answer, we do try it one more time within 15 minutes. So, if the participant passes both tests, there will only be two calls. If we are unsuccessful in reaching them, there could be three, or possibly even a maximum of four in one day."

During Valentine's testimony, documents summarizing Ball's VICAP violations were admitted into evidence. The documents show multiple calls made to Ball's residence and not answered (and thus no breath samples submitted) on several mornings and nights in April and May 2009.

Angie Lezack, the probation officer who supervised Ball's participation in the VICAP program, testified that she had discussed with Ball his responsibilities regarding the program before he started it, including the two report times per day that he would have to provide a breath specimen. Lezack recalled that Ball had agreed to the 8:00 a.m. and 10:30 p.m. time periods for the calls and that those times had never changed. Lezack also testified that she has supervised other probationers in the program and that Ball's level of noncompliance was not typical. In Lezack's opinion, the VICAP program is effective and a good tool to prevent people from drinking alcohol. In Ball's case, however, Lezack had "no clue" if Ball had stopped drinking. She explained, "I advised the defendant that if he misses a call, it's an automatic alcohol violation. I mean, that's what—we

10

automatically assume it's an alcohol violation when he misses a call. So, he's aware that that's the case. I've told him that before."

Ball testified that he remembered discussing VICAP with his probation officers, but he disputed the State's contention that he was able to choose the times in which to receive the calls. Ball acknowledged missing some of the calls, but he blamed most of the missed calls on the prescription medications that he was taking for a ruptured disk in his back and a "chronic panic disorder." The medications, Ball explained, caused drowsiness, sleepiness, and "slow" hearing. Ball also claimed that on some occasions he would receive a call and hear nothing other than a "fax noise" and that some of the calls came in "before and after the cut off times." Information regarding Ball's medication was admitted into evidence, as was a letter Ball had written to Lezack complaining about the VICAP program.

Viewing the above evidence in the light most favorable to the trial court's ruling, we conclude that the State satisfied its burden to prove by a preponderance of the evidence that Ball failed to provide a breath sample as directed. Two of Ball's probation officers testified that Ball had failed to comply with the VICAP requirement. Their testimony was supported by documentation tending to show that on multiple occasions, Ball had not answered the phone as he was required to do. While these documents show that some missed calls were made outside the time periods during which Ball was required to answer, others show that many of the missed calls were made during the agreed upon times.

On appeal, Ball repeats many of the same arguments that he made during the revocation hearing, namely that there were technical problems with the VICAP device, that he had legitimate reasons for missing the calls on certain occasions, and that the "vague" requirements of

11

the program were not sufficiently explained to him. However, the trial court would not have abused its discretion in crediting the testimony of Ball's probation officers that they had explained the details of the program to Ball and the consequences of him missing a call, in not crediting Ball's testimony attempting to excuse his noncompliance, and in crediting Valentine's testimony about the reliability of the VICAP device.

Having found that the State satisfied its burden of proof, we cannot conclude that the trial court abused its discretion in revoking Ball's community supervision. We overrule Ball's second point of error.

## CONCLUSION

We affirm the judgment of the trial court.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: June 1, 2011

Do Not Publish